# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REDBOX AUTOMATED RETAIL, LLC,<br><br>        Plaintiff,<br><br>vs.<br><br>TWENTIETH CENTURY FOX HOME<br>ENTERTAINMENT, LLC,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)   Civil Action No. 09-592-RBK<br>)<br>)<br>)   **REDACTED - PUBLIC VERSION**<br>)<br>)<br>)<br>)<br>)<br>) |

## TWENTIETH CENTURY FOX HOME ENTERTAINMENT LLC'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA

OF COUNSEL:

Yosef Riemer (*pro hac vice pending*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York City, NY 10022
Tel: (212) 446-4802
Email: yosef.riemer@kirkland.com

Corey C. Watson (*pro hac vice pending*)
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, CA 90017
Tel: (213) 680-8482
Email: corey.watson@kirkland.com

Beth Moskow-Schnoll (No. 2900)
BALLARD SPAHR LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
Tel:   (302) 252-4447
Fax:  (302) 355-0221
Email: moskowb@ballardspahr.com

Neal Walters
BALLARD SPAHR LLP
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ 08043
Tel: (856) 761-3438
Email: waltersn@ballardspahr.com

*Attorneys for Twentieth Century Fox Home
Entertainment LLC*

Dated: October 1, 2009

Dockets.Justia.com

# TABLE OF CONTENTS

INTRODUCTION AND NATURE AND STAGE OF THE PROCEEDINGS ..............................1

SUMMARY OF ARGUMENT..................................................................................................2

STATEMENT OF FACTS .........................................................................................................3

A.    Fox's Business Is Centered In And Around Los Angeles, California. .................................3

B.    Redbox Is Headquartered In Illinois But Conducts Business In California. ........................4

C.    Fox And Redbox Met Several Times In Los Angeles And Attempted To
Negotiate A Contract, But The Negotiations Broke Down. ................................................5

D.    Redbox Sues Fox Because Redbox Did Not Get The Price Or Terms It Wanted
From Fox..............................................................................................................................8

ARGUMENT...............................................................................................................................9

A.    Redbox Could Have Filed This Case In The Central District Of California......................11

B.    The Private Interests Favor A Transfer To The Central District Of California..................12

      1.    The Majority Of The Events Underlying Redbox's Claims Occurred In Or
Around The Central District Of California, Far From The District Of
Delaware. ...............................................................................................................12

      2.    The Vast Majority Of Witnesses Relating To Redbox's Allegations Are
Located In The Central District Of California.........................................................13

      3.    The Vast Majority Of Documents Relating To Redbox's Allegations Are
Located In The Central District Of California.........................................................15

C.    Transfer To The Central District Of California Is In The Interest Of Justice.....................16

CONCLUSION..........................................................................................................................17

# TABLE OF AUTHORITIES

Page No.(s)

**Cases**

*Barbera v. Lowe's Home Ctrs., Inc.,*
No. 09-1617, 2009 WL 1362608 (E.D. Pa. May 15, 2009)............................................. 14

*Broad. Data Retrieval Corp. v. Sirius Satellite Radio, Inc.,*
No. CV 06-1190JFWSSX, 2006 WL 1582091 (C.D. Cal. June 6, 2006)................... 13, 14

*Brown v. Woodring,*
174 F. Supp. 640 (M.D. Pa. 1959).................................................................................. 14

*Burstein v. Applied Extrusion Techs. Inc.,*
829 F. Supp. 106 (D. Del. 1992)..................................................................................... 10

*Cressman v. United Air Lines,*
158 F. Supp. 404 (S.D.N.Y. 1958).................................................................................. 17

*Fitzgerald v. Central Gulf Steamship Corp.,*
292 F. Supp. 847 (E.D. Pa. 1968).............................................................................. 13, 16

*Foxworth v. United States,*
No. 05-1683, 2005 WL 1869460 (E.D. Pa. Aug. 4, 2005) .................................. 10, 11, 13

*Glickenhaus v. Lytton Financial Corp.,*
205 F. Supp. 102 (D. Del. 1962)....................................................................................... 3

*High River Ltd. P'ship v. Mylan Labs., Inc.,*
353 F. Supp. 2d 487 (M.D. Pa. 2005)............................................................................. 15

*Jumara v. State Farm Ins. Co.,*
55 F.3d 873 (3d Cir. 1995)................................................................................... 9, 10, 11

*Kirschner Bros. Oil, Inc. v. Pannill,*
697 F. Supp. 804 (D. Del. 1988)................................................................................ 14, 15

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League,*
89 F.R.D. 497 (C.D. Cal. 1981)...................................................................................... 16

*Lindley v. Caterpillar, Inc.,*
93 F. Supp. 2d 615 (E.D. Pa. 2000)................................................................................ 14

*Mazinski v. Dight,*
99 F. Supp. 192 (W.D. Pa. 1951)................................................................................... 17

*Nat'l Mortgage Network, Inc. v. Home Equity Ctrs., Inc.,*
683 F. Supp. 116 (E. D. Pa. 1988) ................................................................................................. 12

*Panavision Int'l L.P. v. Toeppen,*
141 F.3d 1316 (9th Cir. 1988) ......................................................................................................... 11

*Pennwalt Corp. v. Purex Indus., Inc.,*
659 F. Supp. 287 (D. Del. 1986) ..................................................................................................... 12

*SAS of Puerto Rico v. Puerto Rico Tel. Co.,*
833 F. Supp. 450 (D. Del. 1993) ..................................................................................................... 12

*Sell v. Greyhound Corp.,*
228 F. Supp. 134 (E.D. Pa. 1964) ................................................................................................... 17

*Strategic Energy, L.L.C. v. Agrifos Fertilizer Inc.,*
No. 2:06-CV-1100, 2006 WL 3489967 (W.D. Pa. Dec. 4, 2006) ................................................... 11

*Totonelly v. Cardiology Assocs. of Corpus Christi, Inc.,*
932 F. Supp. 621 (S.D.N.Y. 1996) .................................................................................................. 12

*Versa Prods., Inc. v. Home Depot, USA, Inc.,*
No. 1:04-CV-1202, 2004 WL 5544746 (N.D. Ga. June 22, 2004) ................................................... 13

*Viasystems Techs. Corp., L.L.C. v. Forest City Commercial Dev., Inc.,*
No. 4:08-CV-124, 2008 WL 2064971 (E.D. Mo. May 14, 2008) ..................................................... 2

*Wagner v. N.Y. Marriott Marquis,*
502 F. Supp. 2d 312 (N.D.N.Y. 2007) ............................................................................................ 13

**Statutes**

15 U.S.C. § 1 ..................................................................................................................................... 11

17 U.S.C. § 101 ................................................................................................................................. 11

28 U.S.C. § 1331 ............................................................................................................................... 11

28 U.S.C. § 1332 ............................................................................................................................... 11

28 U.S.C. § 1337 ............................................................................................................................... 11

28 U.S.C. § 1367 ............................................................................................................................... 11

28 U.S.C. § 1391 ............................................................................................................................... 11

Fed. R. Civ. P. 12(b)(6) ..................................................................................................................... 2

Fed. R. Civ. P. 45..................................................................................................................... 14

## INTRODUCTION AND NATURE AND STAGE OF THE PROCEEDINGS

The District of Delaware has no connection to the events, people, or documents at issue in this case. The Central District of California is where this case belongs. For at least two years, Redbox Automated Retail, LLC traveled to Los Angeles to meet with Twentieth Century Fox Home Entertainment LLC executives, communicated with Fox at Fox's headquarters in Los Angeles, hired Los Angeles-based consultants to visit with Fox in Los Angeles, and negotiated with Fox in Los Angeles over the provision of Fox DVDs to Redbox. In that timespan, Fox executives met with Redbox in Los Angeles no fewer than five times.

Fox negotiated distribution terms for several months and made multiple offers to provide Fox DVDs directly to Redbox. For example, early in the negotiations, Fox offered Redbox the alternatives of either (i) obtaining any Fox DVD *immediately* upon the DVD's release date (referred to as the "street date"), for a ▆▆-year period; or (ii) obtaining Fox DVDs at a lower per-DVD price 30 days after the street date, also for a ▆▆-year period. Redbox countered with a ▆▆-year (as opposed to a ▆▆-year) proposed distribution agreement under which Fox would provide DVDs on their street date, but on pricing terms more favorable to Redbox than Fox had offered for DVDs sold 30 days after the street date. Fox offered to accept the ▆▆-year deal term, to provide DVDs on the street date, and made further concessions on price. Redbox rejected Fox's proposal, and the negotiations came to a halt. In the end, the parties agreed on all basic terms, except Fox wanted the greater of $▆▆ per rental transaction or ▆▆% of gross revenue, while Redbox wanted to pay the greater of $▆▆ per rental transaction or ▆▆% of gross revenue.

When Fox would not give up the $▆▆ per Fox DVD that separated the parties in the negotiation, Redbox sued Fox six days later for alleged antitrust and other violations, claiming that Fox had prevented Redbox from obtaining Fox DVDs on the DVDs' street dates. Redbox

could have filed this lawsuit in the Central District of California — where most of the events leading up to this case took place and where many of the witnesses (both party and third-party) are located. Instead, Redbox filed this suit on the opposite end of the country in the District of Delaware. But Delaware has no connection to the events underlying this case. No meetings took place in Delaware. No witnesses are located in Delaware. And no documents are stored in Delaware. Redbox, therefore, chose to file this suit in one of the least convenient fora having no connection to this case.

In its public relations campaign touting this lawsuit, Redbox portrays this case as a battle between it and "Hollywood."[1] While Fox rejects the pejorative, "Hollywood" is significant here as it is the epicenter of the events, witnesses, and evidence in this case. Courts frequently transfer cases to the forum where the underlying events at issue occurred and the documents and witnesses are located. Accordingly, pursuant to 28 U.S.C. § 1404(a), this case should be transferred to the Central District of California.[2]

## SUMMARY OF ARGUMENT

This case should be transferred to the Central District of California under 28 U.S.C. § 1404(a) for the following reasons:

1.    The majority of the underlying events took place in the Central District of California; none of the events happened in the District of Delaware.

---

[1]    *See* Welcome to Save Low Cost DVDs, http://www.savelowcostdvds.com (last visited Sept. 29, 2009), Declaration of David Horowitz ("Horowitz Decl.") ¶ 2, Ex. 1.

[2]    Fox is filing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) concurrently with this motion to transfer venue. The transfer motion should be resolved first. Only if the transfer motion is denied does this Court need to decide the motion to dismiss. *See, e.g.*, *Viasystems Techs. Corp., L.L.C. v. Forest City Commercial Dev., Inc.*, No. 4:08-CV-124, 2008 WL 2064971, at *1 (E.D. Mo. May 14, 2008) (noting that the court will grant the motion to transfer pursuant to Section 1404(a), and will decline to decide the pending motion to dismiss).

2

2.     Many of the key third-party and party witnesses work and reside in Los Angeles; none resides in Delaware.

3.     Many of the documents related to Redbox's allegations in this case are maintained in or around Los Angeles; no documents are maintained in Delaware.

4.     The Central District of California's docket conditions allow for the quickest resolution of Redbox's claims.

5.     The only connections this case has to Delaware are that (1) Redbox sued in Delaware; and (2) Redbox and Fox are incorporated in Delaware. But these limited connections do not justify saddling Fox with cross-country litigation. *See, e.g., Glickenhaus v. Lytton Fin. Corp.*, 205 F. Supp. 102, 106 (D. Del. 1962) ("That Delaware is plaintiff's choice of forum and defendant's state of incorporation are legal facts which, standing alone, do not control the theatre of litigation.").

## STATEMENT OF FACTS

### A.     Fox's Business Is Centered In And Around Los Angeles, California.

Fox is incorporated under Delaware law with its principal place of business in the Century City area of Los Angeles, California. (Declaration of Donald V. Jeffries ("Jeffries Decl.") ¶ 3.) Fox distributes DVDs. (*Id.* ¶ 2.) To this end, Fox's affiliate, Twentieth Century Fox Film Corporation ("TCFFC") spends hundreds of millions of dollars each year and an immeasurable amount of creative energy producing films designed to entertain audiences worldwide. (*Id.*)

Fox distributes its DVDs to consumers through several channels. (*Id.*) In certain instances, Fox sells or leases DVDs directly to large retailers that rent the DVDs (e.g., Blockbuster and Netflix) and/or that sell the DVDs to consumers (e.g., Wal-Mart and Best Buy).

3

(*Id.*) In other instances, Fox sells or leases DVDs through wholesale distributors, which then provide the DVDs to retailers for rental and/or sale. (*Id.*)

Fox currently employs approximately 300 people at its Los Angeles headquarters. (*Id.* ¶ 3.) Fox's President, all of its Executive and Senior Vice Presidents in the United States, and the vast majority of its other officers involved in the distribution of Fox DVDs in the United States live and work in the Los Angeles, California area. (*Id.* ¶ 4.) The Fox employees primarily involved in the formation of Fox's business strategy with respect to the distribution and sale of DVDs are located in Los Angeles. (*Id.*) The overwhelming majority of Fox's paper and electronic files (stored on computer servers and personal computers) are located in or around Los Angeles. (*Id.* ¶ 5.)

## B.    Redbox Is Headquartered In Illinois But Conducts Business In California.

Redbox is incorporated in Delaware, but its principal place of business is in Oakbrook Terrace, Illinois. (Compl. ¶ 6.)[3] Redbox does not appear to have any offices in Delaware, nor do any of its top executives appear to reside in Delaware. Redbox rents DVDs to customers at self-serve kiosks located in various retail outlets, including fast-food restaurants, grocery stores and convenience stores. (Compl. ¶ 18.) Redbox has received its supply of Fox DVDs primarily from two wholesale distributors: Video Products Distributors, Inc. ("VPD") and Ingram Entertainment ("Ingram"). (*Id.* ¶¶ 29-32.) VPD is a California corporation with its principal place of business in Folsom, California. (*Id.* ¶ 10.) Ingram is a Tennessee corporation with its principal place of business in La Vergne, Tennessee. (*Id.* ¶ 9.)

Redbox has experienced considerable growth over the past few years. (Compl. ¶ 17.) This rapid growth has, in turn, provided Redbox with considerable clout and bargaining power

---

[3]    "Compl." refers to the complaint filed by Redbox against Fox dated August 11, 2009. (D.I. 1.)

4

— even with the "Hollywood" studios it has recently demonized. Indeed, over the past two months, Redbox has entered into multi-million dollar distribution agreements with three major movie studios: Lions Gate Entertainment Corporation, Paramount Home Entertainment Inc. and Sony Pictures Home Entertainment Inc. *See* "Paramount Home Entertainment and *Redbox* Announce Trial License Program" (Aug. 25, 2009), Horowitz Decl. ¶ 3, Ex. 2; "*Redbox* and Lionsgate Sign Multi-Year Distribution Agreement" (Aug. 11, 2009), Horowitz Decl. ¶ 4, Ex. 3; "Sony Pictures Home Entertainment and *Redbox* Announce Distribution Agreement" (July 21, 2009), Horowitz Decl. ¶ 5, Ex. 4.

## C.     Fox And Redbox Met Several Times In Los Angeles And Attempted To Negotiate A Contract, But The Negotiations Broke Down.

Beginning in approximately August 2004 and ending around August 2009, Redbox and Fox had multiple business meetings. (Jeffries Decl. ¶ 7.) The Fox employees involved in the meetings and discussions with Redbox concerning potential business opportunities included the following people: (a) Mike Dunn, President; (b) Simon Swart, Executive Vice President and General Manager; (c) Danny Kaye, Executive Vice President, Global Research and Technology Strategy; (d) Donald Jeffries, Senior Vice President of Sales; (e) Dan Mackechnie, Senior Vice President, Finance; (f) Dennis Franks, Senior Vice President, Legal Affairs; and (g) Matt Aragachi, Vice President, Finance. (*Id.*) Each of these individuals works at Fox's headquarters in the Century City area of Los Angeles and resides in the Los Angeles area. (*Id.*)

With the exception of one meeting that took place at a convention in Las Vegas, every high-level, in-person meeting between Fox and Redbox over this period took place in Los

5

Angeles, primarily at Fox's headquarters. (*Id.* ¶¶ 8-13.)[4] Fox and Redbox executives never met in Delaware. (*Id.* ¶ 7.)

Although representatives of Fox and Redbox had met several times before, the focus of the parties' meetings in 2009 turned to a potential deal whereby Fox would directly provide DVDs to Redbox. The first meeting in which a specific proposal was discussed occurred on May 18, 2009 at Fox's headquarters in Los Angeles. At that meeting, Danny Kaye, Simon Swart and Don Jeffries of Fox met with Dick Sowa and Paul Brindze, independent consultants representing Redbox. (*Id.* ¶ 12.) Sowa and Brindze, potential third-party witnesses in this case, are based in the Los Angeles area. (*Id.*) At that meeting, Redbox made a presentation setting out basic terms of a proposed agreement in which Fox would directly provide its DVDs to Redbox. (*Id.*, Ex. C.)

After meeting with Redbox's consultants, Fox met again with Redbox on June 29, 2009 at Fox's Los Angeles offices. (*Id.* ¶ 13.) Simon Swart, Dennis Franks, Dan Mackechnie and Donald Jeffries attended on Fox's behalf. (*Id.*) Mitch Lowe and Scott Goldberg attended on Redbox's behalf. (*Id.*) At the meeting, Fox presented two proposals for providing Fox DVDs to Redbox: (i) one proposal for the provision of Fox DVDs for rental to consumers 30 days after the "street date" (the date the DVD is released into the market) at the greater of $▮▮▮ per DVD rental or ▮% of gross revenue, and (ii) a second proposal for the provision of Fox DVDs for rental to consumers upon the street date at the greater of $▮▮▮ per DVD rental or ▮% of gross revenue. (*Id.*) Fox proposed a ▮▮▮-year agreement under either option.

---

[4]  As described in the Jeffries Declaration, lower-level sales employees from Fox's sales department met with Redbox during routine sales calls, often at Redbox's headquarters in Illinois. These meetings did not take place in Delaware. Moreover, these meetings did not concern Fox's distribution policy or revenue-sharing opportunities. (Jeffries Decl. ¶ 8, n.1.)

6

On July 7, 2009, Redbox submitted a counterproposal. (*Id.* ¶ 14, Ex. D.) Redbox did not respond to the proposal in which Fox offered to provide Fox DVDs 30 days after the street date. Rather, Redbox proposed that Fox provide DVDs directly to Redbox on the following terms:

- First, Fox would provide DVDs for rental to consumers on the street date.

- Second, instead of Fox sharing the greater of ██% of gross revenue or $██ per DVD rental, Redbox proposed the greater of ██% or $██ per rental transaction.

- Third, Redbox proposed ███████████████████████████████████████████████ ████████████.

- Fourth, Redbox proposed a ██-year deal instead of ██ years as originally proposed by Fox.

(*Id.*) In other words, Redbox demanded Fox DVDs for street date rentals, but at a price even more favorable to Redbox than the price Fox offered for rentals 30 days after the street date.

Although Fox executives in Los Angeles considered Redbox's counterproposal, Fox ultimately determined that the counterproposal was inadequate. (*Id.* ¶ 15.) Nevertheless, Fox tried again to reach agreement. To this end, on July 17, 2009, Fox conveyed to Redbox a counter to Redbox's July 7, 2009 proposal. (*Id.*, Ex. E.) Regarding the key deal points, Fox proposed:

- First, Fox would agree to provide DVDs for rental on the street date.

- Second, Fox would reduce the price it was demanding from the greater of ██% of gross revenue or $██ per rental transaction, to the greater of ██% of gross revenue or $██ per rental transaction.

- Third, Fox ████████████████████████████████████████████.

- Fourth, Fox would agree to Redbox's proposed deal term of ██ years.

(*Id.*)

7

On or about July 29, 2009, Redbox and Fox discussed on a conference call Fox's counterproposal. (*Id.* ¶ 16.) Dennis Franks, Dan Mackechnie and Donald Jeffries participated for Fox. (*Id.*) Mitch Lowe and Scott Goldberg participated for Redbox. (*Id.*) Mr. Lowe, on Redbox's behalf, rejected Fox's July 17, 2009 counterproposal regarding revenue per rental transaction. (*Id.*) Specifically, Redbox rejected Fox's proposal to share the greater of ███% of gross revenue or $███ per rental transaction; instead, Redbox proposed the greater of ███% of gross revenue or $███ per rental transaction. (*Id.*) Therefore, the negotiations fell apart over Redbox's refusal to pay Fox $███ more per rental transaction for Fox product.

Although Fox could at that point have stopped distribution of Fox DVDs to Redbox altogether, it instead permitted its distributors, Ingram and VPD[5], to supply Fox DVDs to vending machine kiosk accounts, such as Redbox, for rental 30 days after the initial home video release date, but not earlier. (*Id.* ¶ 17; *see also* Compl. ¶ 34.)

## D.     Redbox Sues Fox Because Redbox Did Not Get The Price Or Terms It Wanted From Fox.

Simon Swart communicated Fox's decision to Mitch Lowe and Scott Goldberg of Redbox on a call that took place on or about August 4, 2009. (Jeffries Decl. ¶ 18.) Despite Fox's business decision, Redbox has since publicly stated that "Redbox will continue to carry all major new releases, *including 20th Century Fox titles*, at the more than 17,000 *redbox* locations nationwide." (Horowitz Decl. ¶ 6, Ex. 5 (emphasis added).) This statement contradicts the allegations in the Complaint that Redbox is unable to obtain new-release Fox DVDs for its kiosks. (Compl. ¶¶ 36-39.)

---

[5]     Fox's primary contact at VPD is Tom Kielty, who is based out of Folsom, California. (Jeffries Decl. ¶ 6.) Fox's primary contact at Ingram is Bob Geistman, who is based out of LaVergne, Tennessee. (*Id.*)

Fox followed up the August 4, 2009 phone call with a letter to Redbox sent by Simon Swart, dated August 5, 2009. (Jeffries Decl. ¶ 18, Ex. F.) In that letter, Mr. Swart summarized the status of negotiations between Fox and Redbox as follows:



(*Id.*) Mr. Swart further stated that: ████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

█████████████ (*Id.*) Six days later, Redbox sued. (*Id.* ¶ 19.)

In its Complaint, Redbox claims that Fox has "boycotted" Redbox and that its failure to provide Fox DVDs to Redbox through wholesale distributors violates federal antitrust laws. Instead of filing its lawsuit in the Central District of California (the location of the events, witnesses and documents related to Redbox's allegations), Redbox chose to sue Fox in the District of Delaware.

## ARGUMENT

Virtually every relevant factor weighs heavily in favor of transferring this case from the District of Delaware to the Central District of California. Section 1404(a) provides that an action may be transferred "for the convenience of parties and witnesses, [and] in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

Both "private" and "public" interests are considered. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The private interests include "(1) the plaintiff's forum preference

as manifested in the original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties as indicated by their relative physical and financial condition, (5) the convenience of the witnesses, and (6) the location of books and records." *Foxworth v. U.S.*, No. 05-1683, 2005 WL 1869460, at *2 (E.D. Pa. Aug. 4, 2005) (citing *Jumara*, 55 F.3d at 879) (internal quotation marks omitted).

As discussed below, the private interests compel transferring this case because many of the underlying events at issue occurred in the Central District of California, and most of the documents and witnesses are found there. By contrast, Delaware is not the location of any of the events, documents or witnesses. Redbox itself is headquartered in Illinois, not Delaware. Importantly, "[w]hen the plaintiff has chosen to bring suit in a district that is not [plaintiff's] home turf and which has no connection to any of the acts giving rise to the lawsuit, the convenience to the plaintiff is not as great as it would be were [plaintiff] litigating at or near [plaintiff's] principal place of business or at the site of activities at issue in the lawsuit." *Burstein v. Applied Extrusion Techs. Inc.*, 829 F. Supp. 106, 110 (D. Del. 1992) (citations and internal quotations omitted). "Consequently, the quantum of inconvenience to [the] defendant needed to tip the balance strongly in favor of transfer is concomitantly reduced." *Id.* (citation and internal quotation marks omitted).

Likewise, the public interests favor transfer.[6] Given that Delaware has no connection to the case and California is central to the case, the Central District of California has a greater interest in the case and offers a more convenient and expeditious forum.

---

[6] Among the public interests are "(1) the enforceability of the judgment, (2) practical considerations that could make the trial easy, expeditious, or inexpensive, (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) the local interest in deciding local controversies at home, (5) the public policies of the fora, and (6) the familiarity of

10

**A.    Redbox Could Have Filed This Case In The Central District Of California.**

In considering a Section 1404(a) motion to transfer, "the first step the Court must take . . . is to determine whether the action might have been brought in the transferee forum." *Strategic Energy, L.L.C. v. Agrifos Fertilizer Inc.*, No. 2:06-CV-1100, 2006 WL 3489967, at *1 (W.D. Pa. Dec. 4, 2006) (citation omitted). Here, Redbox could have filed this case in the Central District of California.

The Central District of California has subject matter jurisdiction over Redbox's Sherman Act claims and copyright claim (*see* 28 U.S.C. §§ 1331, 1337, 15 U.S.C. §§ 1, *et seq.* (Sherman Antitrust Act), and 17 U.S.C. §§ 101, *et seq.* (Copyright Act)), as well as Redbox's tortious interference with contractual business relationships claim (*see* 28 U.S.C. § 1367). The Central District of California also has personal jurisdiction over Fox, given that Fox's headquarters are located in the Century City area of Los Angeles, California. (Jeffries Decl. ¶ 3); *see also Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) ("General jurisdiction exists when a defendant is domiciled in the forum state or his activities there are substantial or continuous and systematic.") (internal quotation marks and citations omitted); *see also* 28 U.S.C. § 1332(c)(1) (corporation is a citizen of any state where it has its principal place of business).

Finally, venue is proper in the Central District of California under 28 U.S.C. § 1391(b) ("A civil action wherein jurisdiction is not founded solely on diversity of citizenship may . . . be brought only in . . . a judicial district where any defendant resides . . . ."). Fox is deemed to "reside" in the Central District of California because it is subject to personal jurisdiction there. *See* 28 U.S.C. § 1391(c) ("[A] defendant that is a corporation shall be deemed to reside in any

---

the trial judge with the applicable state law in diversity cases." *Foxworth*, 2005 WL 1869460, at *2 (citing *Jumara*, 55 F.3d at 879-80) (internal quotation marks and citation omitted).

judicial district in which it is subject to personal jurisdiction at the time the action is commenced.").

## B. The Private Interests Favor A Transfer To The Central District Of California.

### 1. The Majority Of The Events Underlying Redbox's Claims Occurred In Or Around The Central District Of California, Far From The District Of Delaware.

There can be no dispute that the key events underlying Redbox's allegations took place in or around Los Angeles, California. Indeed, most of the key meetings between Fox and Redbox occurred in Los Angeles. (Jeffries Decl. ¶¶ 7-8, 10-13.) Courts routinely grant motions to transfer venue when the underlying events at issue occurred in the transferee forum. *Totonelly v. Cardiology Assocs. of Corpus Christi, Inc.*, 932 F. Supp. 621, 623 (S.D.N.Y. 1996) ("Courts routinely transfer cases where the principal events occurred, and the principal witnesses are located in another district.") (citation omitted); *see also SAS of Puerto Rico v. Puerto Rico Tel. Co.*, 833 F. Supp. 450, 451-52 (D. Del. 1993) (granting motion to transfer case involving antitrust claims from Delaware to Puerto Rico where all of the related acts, including the twenty-five meetings between the parties, took place in Puerto Rico); *Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287, 292 (D. Del. 1986) (transferring action to the Central District of California where the "bulk of the negotiations preceding the agreement either took place in California or were conducted by phone with one party located in California"); *Nat'l Mortgage Network, Inc. v. Home Equity Ctrs., Inc.*, 683 F. Supp. 116, 119 (E. D. Pa. 1988) (transferring action where "the alleged operative acts giving rise to the cause of action" occurred in the transferee forum, the principal witnesses were in the transferee forum, and documents were more likely to be found in or near the transferee forum).

By contrast, none of the operative events, meetings or negotiations took place in Delaware. In these circumstances, Redbox's choice of forum is entitled to little, if any, weight.

12

*See, e.g., Wagner v. N.Y. Marriott Marquis*, 502 F. Supp. 2d 312, 317 (N.D.N.Y. 2007)

("[W]here none of the operative facts of the action occur in the forum selected by the plaintiff,

his choice of that forum certainly is entitled to less weight than is ordinarily the case.") (citing

*Fitzgerald v. Cent. Gulf Steamship Corp.*, 292 F. Supp. 847, 849 (E.D. Pa. 1968)); *Burstein,* 829

F. Supp. at 110 (same); *see also Versa Prods., Inc. v. Home Depot, USA, Inc.*, No. 1:04-CV-

1202, 2004 WL 5544746, at *1 (N.D. Ga. June 22, 2004) (noting that the case had been

transferred in part because "none of the meetings underlying the case" took place in the

transferor court).

### 2.    The Vast Majority Of Witnesses Relating To Redbox's Allegations Are Located In The Central District Of California.

If this case remains in the District of Delaware, almost every party and third-party

witness with relevant information relating to Redbox's claims would have to travel great

distances — in most cases thousands of miles — to testify in this case. *See Foxworth,* 2005 WL

1869460, at *2 (noting that some courts "have labeled [the convenience of witnesses as] the most

critical factor under 28 U.S.C. § 1404(a)" (citation and internal quotation marks omitted));

*Broad. Data Retrieval Corp. v. Sirius Satellite Radio, Inc.*, No. CV 06-1190JFWSSX, 2006 WL

1582091, at *2 (C.D. Cal. June 6, 2006) (transferring case to the Southern District of New York

where "all of the party witnesses who [were] expected to provide relevant testimony regarding

the design, function and operation of Defendant's allegedly infringing products . . . work and

reside in New York").

Each of Fox's key executives who were involved in meetings and discussions with

Redbox concerning potential business opportunities reside in the Los Angeles area. (Jeffries

Decl. ¶¶ 1, 7.) In fact, Fox does not have a single employee in the state of Delaware, much less

an employee who was involved in any of the events leading to this dispute. (*Id.* ¶ 3); *see also*

13

*Kirschner Bros. Oil, Inc. v. Pannill*, 697 F. Supp. 804, 807 (D. Del. 1988) (granting motion to transfer pursuant to Section 1404(a) in part because "no witnesses reside or conduct business in Delaware") (citations omitted); *see also Broad. Data Retrieval Corp.*, 2006 WL 1582091, at *2 (granting motion to transfer venue under Section 1404(a) and noting that the Plaintiff has "failed to identify even a single potential witness who resides in [the state in which the transferor forum is located]").

Fox is not aware of any Redbox employees located in Delaware. This factor likewise favors transfer. *See, e.g., Brown v. Woodring*, 174 F. Supp. 640, 647-48 (M.D. Pa. 1959) (transferring the action based in part on the convenience to the plaintiff, as well as the plaintiff's witnesses).

Finally, many key third-party witnesses are beyond the subpoena powers of the District of Delaware, but not the Central District of California. *See, e.g., Barbera v. Lowe's Home Ctrs., Inc.*, No. 09-1617, 2009 WL 1362608, at *3 (E.D. Pa. May 15, 2009) (granting motion to transfer venue where some of the witnesses were beyond the subpoena power of the transferor court, but within the subpoena power of the transferee court) (citing *Lindley v. Caterpillar, Inc.*, 93 F. Supp. 2d 615, 618 (E.D. Pa. 2000) (granting motion to transfer venue and noting that "it is generally preferable to prosecute a case in a location where relevant witnesses can be compelled to attend") (citations omitted)); *see also* Fed. R. Civ. P. 45. For example, Dick Sowa and Paul Brindze, Redbox's third-party consultants who met with Fox concerning potential revenue-sharing opportunities, are both based in the Los Angeles area. (Jeffries Decl. ¶ 12.) Messrs. Sowa and Brindze will likely be key witnesses in this case.

In the end, Fox is not aware of any *any* potential witness who works or resides in the District of Delaware. Litigating this case in Delaware would force Fox employees to disrupt their lives

14

and leave their jobs and homes to attend a trial in a distant forum. Because a substantially more convenient forum is available, forcing this burden is unjustified. *See, e.g., Kirschner Bros. Oil, Inc.*, 697 F. Supp. at 807 (granting motion to transfer when "no witnesses reside[d] or conduct[ed] business in Delaware"). Moreover, third parties with potentially key information within the subpoena power of the Central District of California will be outside this Court's subpoena powers and, even if voluntarily willing to appear at trial, would need to travel from Los Angeles to Delaware.

3.      The Vast Majority Of Documents Relating To Redbox's Allegations Are Located In The Central District Of California.

Because the key events underlying Redbox's allegations occurred in, and Fox's headquarters are located in, the Central District of California, the vast majority of relevant documents are located there too. In fact, the overwhelming majority of Fox's paper and electronic files (stored on computer servers and personal computers) are located in or around Los Angeles. (Jeffries Decl. ¶ 5.)

By contrast, Fox is aware of no potentially relevant documents located in the District of Delaware. (*Id.*) Thus, the location of documents pertaining to Fox's allegations in this case justifies transfer to the Central District of California. *See, e.g., Kirschner Bros. Oil, Inc.*, 697 F. Supp. at 807 (granting motion to transfer where all of the relevant corporate records were located in the transferee forum and no relevant documents were located in the transferor forum); *see also High River Ltd. P'ship v. Mylan Labs., Inc.*, 353 F. Supp. 2d 487, 498 (M.D. Pa. 2005) (granting motion to transfer where none of the relevant documents were located in the transferor court, and many of the documents were prepared and located in the transferee district).

15

## C.     Transfer To The Central District Of California Is In The Interest Of Justice.

Not only is the Central District of California the most convenient and efficient forum in which to litigate this case, it also is the forum that would likely allow for the quickest resolution of Redbox's claims. For example, the Central District of California has a shorter median time from filing to trial (22.0 months in 2008) as compared to the District of Delaware (25.0 months in 2008). (*See* Horowitz Decl. ¶ 7, Ex. 6.)[7] In 2007, the difference between the two districts was even greater — 21.3 months for the Central District of California versus 27.0 months for the District of Delaware. (*Id.*) The Central District of California also has a shorter median time from filing to disposition (7.0 months in 2008) compared to the District of Delaware (11.2 months in 2008). (*Id.*) The relative efficiency of the Central District of California in resolving this case is yet another factor justifying transfer. *See, e.g., Fitzgerald*, 292 F. Supp. at 850 ("A final compelling consideration is that if the case is transferred the likelihood is that it will have been tried and finally disposed of in the transferee court approximately fourteen months before it could even have been reached for trial in this Court.") (footnote reference omitted); *cf. L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 501 (C.D. Cal. 1981) (denying motion to transfer where speedier trial could be had in original forum than in proposed transferee forum).

The *only* potential factor weighing in favor of the District of Delaware is that Redbox chose to file cases against two other Hollywood studios, Universal and Warner Brothers, in Delaware. Although Redbox also asserts antitrust, misuse and tort claims in those cases, they

---

[7]     The District of New Jersey has an even longer median time from filing to trial (38.5 months in 2008). (*Id.*)

16

involve different parties[8], different witnesses, different documents, different representations and different factual allegations. Even if these cases were similar, "the fact that other similar actions are pending is only one among many relevant factors which the court must consider." *Cressman v. United Air Lines*, 158 F. Supp. 404, 407 (S.D.N.Y. 1958) (granting the motion to transfer even though similar actions were pending in the transferor district, because the moving party had made a "strong showing of inconvenience") (citations omitted); *cf. Sell v. Greyhound Corp.*, 228 F. Supp. 134, 136 (E.D. Pa. 1964) (denying motion to transfer even though several other cases arising out of the same accident were pending in the proposed transferee forum, in light of other factors, such as the fact that the plaintiff was a resident of the transferor forum). Given that every other factor — the location of the events at issue, the location of key potential party witnesses, the location of key potential third party witnesses the location of key documents, and the relative efficiency of the courts — favors the Central District of California, this case should be transferred.

## CONCLUSION

This case belongs in Los Angeles. Delaware has no connection to the events, parties, witnesses or documents at issue in this lawsuit. Fox, therefore, requests that the Court transfer this case to the United States District Court for the Central District of California.

---

[8] *See, e.g., Mazinski v. Dight*, 99 F. Supp. 192, 194 (W.D. Pa. 1951) (denying the motion to transfer even though there was a related case pending in the proposed transferee forum because this factor "would not in itself justify a transfer, especially in light of the fact that [the parties are not the same]").

17

Dated: October 1, 2009

Respectfully submitted,

/s/ Beth Moskow-Schnoll
Beth Moskow-Schnoll (No. 2900)
BALLARD SPAHR LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
Tel: (302) 252-4447
Fax: (302) 355-0221
Email: moskowb@ballardspahr.com

Neal Walters
BALLARD SPAHR LLP
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ 08043
Tel: (856) 761-3438
Email: waltersn@ballardspahr.com

*Attorney for Twentieth Century Fox Home Entertainment LLC*

OF COUNSEL

Yosef Riemer (*pro hac vice pending*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York City, NY 10022
Tel: (212) 446-4802
Email: yosef.riemer@kirkland.com

Corey C. Watson (*pro hac vice pending*)
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, CA 90017
Tel: (213) 680-8482
Email: corey.watson@kirkland.com

## CERTIFICATE OF SERVICE

I, Beth Moskow-Schnoll, hereby certify that on October 1, 2009, I electronically filed the foregoing Twentieth Century Fox Home Entertainment LLC's Opening Brief In Support Of Its Motion To Transfer Venue To The Central District Of California with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following:

> Henry E. Gallagher, Jr.
> Chad S. C. Stover
> CONNOLLY BOVE LODGE & HUTZ LLP
> The Nemours Building
> 1007 North Orange Street
> Wilmington, DE 19899
> Tel: (302) 888-6288
> Fax: (302) 658-0380
> Email: hgallagher@cblh.com

/s/ Beth Moskow-Schnoll
Beth Moskow-Schnoll (No. 2900)