IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REDBOX AUTOMATED RETAIL, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Civil Action No. 09-592-RBK ) ) |
| TWENTIETH CENTURY FOX HOME ENTERTAINMENT, LLC, | ) **REDACTED - PUBLIC VERSION** ) ) |
| Defendant. | ) ) ) ) |

## DECLARATION OF DONALD JEFFRIES IN SUPPORT OF TWENTIETH CENTURY FOX HOME ENTERTAINMENT LLC'S MOTION TO TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA

I, Donald V. Jeffries, declare as follows:

1. I am a Senior Vice President of Sales at Twentieth Century Fox Home Entertainment LLC ("Fox"). I submit this declaration in support of Fox's Motion to Transfer Venue to the Central District of California. I have personal knowledge of the facts set forth herein and if called to testify, could testify competently thereto.

2. Fox's affiliate, Twentieth Century Fox Film Corporation ("TCFFC"), spends hundreds of millions of dollars each year producing films designed to entertain audiences worldwide. As a general matter, after TCFFC's movies are shown in theatres, they are released on DVD by Fox, together with other films for which Fox may acquire rights to distribute. Fox distributes DVDs to consumers through several channels. In certain instances, Fox sells or leases DVDs directly to large retailers that rent the DVDs (e.g., Blockbuster and Netflix) and/or that sell the DVDs to consumers (e.g., Wal-Mart and Best Buy). In other instances, Fox sells or

Dockets.Justia.com

leases DVDs through wholesale distributors, which then provide the DVDs to retailers for rental and/or sale.

3. Fox is incorporated under Delaware law. Fox's headquarters are located at 2121 Avenue of the Stars in the Century City area of Los Angeles, California. Fox currently employs approximately 300 people at its Los Angeles headquarters. Fox does not have an office in Delaware, nor does Fox have any employees based in Delaware.

4. Fox's President, all of its Executive and Senior Vice Presidents in the United States, and the vast majority of its other officers involved in the distribution of Fox DVDs in the United States live and work in the Los Angeles, California area. The Fox employees primarily involved in the formation of Fox's business strategy with respect to the distribution and sale of DVDs to Redbox all live and work in the Los Angeles, California area.

5. The overwhelming majority of Fox's paper and electronic files (stored on computer servers and personal computers) are located in or around Los Angeles, California. I am not aware of any documents related to this litigation that are located in Delaware.

6. Video Products Distributors, Inc. ("VPD") and Ingram Entertainment ("Ingram") are the two distributors currently responsible for the wholesale distribution of Fox DVDs to Redbox. Fox's primary contact at VPD is Tom Kielty. Mr. Kielty is based out of Folsom, California. Fox's primary contact at Ingram is Bob Geistman. Mr. Geistman is based out of LaVergne, Tennessee. Fox has other distributors, none of which, to the best of my knowledge, are headquartered in Delaware.

7. On behalf of Fox, I have been involved in meetings and communications with Redbox, beginning in approximately August 2004 and ending around August 2009. Based on my firsthand knowledge and discussions with Fox personnel, I am aware that other Fox

employees involved in meetings and discussions with Redbox concerning potential business opportunities include: (a) Mike Dunn, President; (b) Simon Swart, Executive Vice President and General Manager; (c) Danny Kaye, Executive Vice President, Global Research and Technology Strategy; (d) Dan Mackechnie, Senior Vice President, Finance; (e) Dennis Franks, Senior Vice President, Legal Affairs; and (f) Matt Aragachi, Vice President, Finance. All of these individuals work at Fox's headquarters in Los Angeles and reside in the Los Angeles area. Fox and Redbox executives never met in Delaware.

8. Individuals from Redbox and Fox have spoken on occasion throughout the past several years.[1] One of the early meetings between executives of the two companies occurred in June 2007. That meeting occurred at Fox's headquarters in Los Angeles, California. To the best of my recollection, Matt Aragachi, Dennis Franks, Dan Mackechnie, and I attended on Fox's behalf. Approximately two representatives attended on Redbox's behalf. Attached as Exhibit A to my declaration is a copy of a presentation Redbox provided to Fox for the June 2007 meeting. At the meeting, Fox and Redbox discussed, among other things, the general contents of the presentation, which included a general description of Redbox's business.

9. Executives of Fox and Redbox met again on June 25, 2008 at the Entertainment Merchant's Association's ("EMA") Home Media Expo in Las Vegas, Nevada. Simon Swart, Danny Kaye, and I, among others, attended on Fox's behalf. Scott Goldberg (Vice President, Purchasing) and Eric Litynski (Buyer) were among those who attended on Redbox's behalf. At that meeting, Fox and Redbox discussed Redbox's general business model.

10. Executives from Fox and Redbox met again on December 11, 2008. This meeting

---

[1] For example, lower-level employees from Fox's sales department met with Redbox during routine sales calls, often at Redbox's headquarters in Illinois. These meetings did not take place in Delaware. These meetings did not concern Fox's distribution policy or revenue-sharing opportunities.

3

also occurred in Los Angeles, at Fox's headquarters. Matt Aragachi and I, among others, attended on Fox's behalf. Scott Goldberg, among others, attended on Redbox's behalf. At the meeting, Redbox provided a presentation to Fox, a copy of which is attached as Exhibit B to my declaration.

11. Fox executives Simon Swart and Dan Mackechnie met with Redbox executives Mitch Lowe and Scott Goldberg over dinner in February, 2009. I normally would have attended this dinner; however, I had a conflict that evening. This February 2009 dinner took place in Los Angeles at a restaurant in the Century City area.

12. On or about May 18, 2009, Danny Kaye, Simon Swart and I met with two consultants representing Redbox, Dick Sowa (with Mediagig Ventures) and Paul Brindze (with Brindze Consulting). Mr. Brindze and Mr. Sowa are based in the Los Angeles area. This meeting occurred at Fox's offices in Los Angeles. At the meeting, Messrs. Sowa and Brindze, on behalf of Redbox, made a presentation to Fox, a copy of which is attached as Exhibit C to my declaration. Exhibit C describes Redbox's proposal for an agreement between Fox and Redbox in which Fox would directly provide its DVDs to Redbox.

13. On June 29, 2009, after receiving Redbox's May 18th proposal, Fox met again with Redbox. Simon Swart, Dennis Franks, Dan Mackechnie and I attended on Fox's behalf. Mitch Lowe and Scott Goldberg attended on Redbox's behalf. This meeting also took place at Fox's headquarters in Los Angeles. At that meeting, Fox presented two proposals for providing Fox DVDs to Redbox: (i) one proposal for the provision of Fox DVDs for rental to consumers 30 days after the "street date" (the date the DVD is released into the market) at the greater of $█ per DVD rental or █% of gross revenue, and (ii) a second proposal for the provision of Fox DVDs for rental to consumers upon the street date at the greater of $█ per DVD rental or █%

4

of gross revenue. Fox proposed a ▮-year agreement under either option.

14. On July 7, 2009, Redbox submitted a counterproposal to Fox. An email from Scott Goldberg to me describing Redbox's counterproposal is attached as Exhibit D to my declaration. Redbox did not respond to the proposal in which Fox offered to provide Fox DVDs for rental 30 days after the street date. Rather, Redbox proposed that Fox provide DVDs directly to Redbox on the following terms: (1) instead of Fox sharing the greater of ▮% of gross revenue or $▮ per DVD rental, Redbox proposed the greater of ▮% or $▮ per rental transaction; (2) Redbox ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; and, (3) Redbox proposed a ▮-year deal-term instead of ▮ years as originally offered by Fox.

15. Fox considered Redbox's counterproposal but ultimately decided it was inadequate. Nevertheless, Fox tried again to reach agreement. To this end, on July 17, 2009, Fox communicated to Redbox a counter to Redbox's proposal. A copy of this counterproposal is attached as Exhibit E to my declaration. As Exhibit E demonstrates, Fox was willing to accept Redbox's proposed extensions to the lease period and deal term. Fox also was willing to reduce the price it was demanding from the greater of ▮% of gross revenue or $▮ per rental transaction to the greater of ▮% of gross revenue or $▮ per rental transaction.

16. On or about July 29, 2009, Dennis Franks, Dan Mackechnie and I participated in a conference call with Mitch Lowe and Scott Goldberg of Redbox to discuss Fox's July 17, 2009 counterproposal. On that call, Mitch Lowe, on Redbox's behalf, rejected Fox's July 17, 2009 counterproposal. Specifically, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Redbox would not agree to Fox's proposed price of the greater of ▮% of gross revenue or $▮ per rental transaction. Instead, Redbox insisted on the greater of ▮% of gross revenue or $▮ per rental transaction.

5

17. Fox ultimately determined that Redbox's proposed limitations were not acceptable. Although Fox could have at that point stopped distribution of Fox DVDs to Redbox altogether, it instead permitted its distributors, Ingram and VPD, to supply Fox DVDs to vending machine kiosk accounts, such as Redbox, 30 days after the initial home video release date, but not earlier.

18. Simon Swart initially communicated this decision to Mitch Lowe and Scott Goldberg of Redbox on a call that took place on August 4, 2009. On August 5, 2009, Simon Swart sent a letter to Mitch Lowe and Scott Goldberg at Redbox summarizing the status of negotiations as follows:



Mr. Swart further stated in his letter as follows: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬ A copy of this letter is attached as Exhibit F to my declaration.

19. Unable to obtain Fox's agreement to provide DVDs on the terms that Redbox demanded, Redbox sued Fox in the District of Delaware six days later.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 29th day of September, 2009 in Los Angeles, California.

_____
Donald V. Jeffries

## CERTIFICATE OF SERVICE

I, Beth Moskow-Schnoll, hereby certify that on October 1, 2009, I electronically filed the foregoing Declaration of Donald Jeffries In Support Of Twentieth Century Fox Entertainment LLC's Motion To Transfer Venue To The Central District Of California with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following:

>Henry E. Gallagher, Jr.
>Chad S. C. Stover
>CONNOLLY BOVE LODGE & HUTZ LLP
>The Nemours Building
>1007 North Orange Street
>Wilmington, DE 19899
>Tel: (302) 888-6288
>Fax: (302) 658-0380
>Email: hgallagher@cblh.com

>/s/ Beth Moskow-Schnoll
>Beth Moskow-Schnoll (No. 2900)

# EXHIBIT A
# FILED UNDER SEAL

# EXHIBIT B
# FILED UNDER SEAL

# EXHIBIT C
# FILED UNDER SEAL

# EXHIBIT D
# FILED UNDER SEAL

# EXHIBIT E
# FILED UNDER SEAL

# EXHIBIT F
# FILED UNDER SEAL

## CERTIFICATE OF SERVICE

I, Beth Moskow-Schnoll, hereby certify that on October 1, 2009, I electronically filed the foregoing Declaration of Donald Jeffries In Support Of Twentieth Century Fox Entertainment LLC's Motion To Transfer Venue To The Central District Of California with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following:

>Henry E. Gallagher, Jr.
>Chad S. C. Stover
>CONNOLLY BOVE LODGE & HUTZ LLP
>The Nemours Building
>1007 North Orange Street
>Wilmington, DE 19899
>Tel: (302) 888-6288
>Fax: (302) 658-0380
>Email: hgallagher@cblh.com

>/s/ Beth Moskow-Schnoll
>Beth Moskow-Schnoll (No. 2900)