## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

REDBOX AUTOMATED RETAIL, LLC,

          Plaintiff,

    vs.

TWENTIETH CENTURY FOX HOME
ENTERTAINMENT, LLC,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 09-592-RBK

**REDACTED - PUBLIC VERSION**

## TWENTIETH CENTURY FOX HOME ENTERTAINMENT LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA

OF COUNSEL:

Yosef Riemer (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York City, NY 10022
Tel: (212) 446-4802
Email: yosef.riemer@kirkland.com

Corey C. Watson (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, CA 90017
Tel: (213) 680-8482
Email: corey.watson@kirkland.com

Beth Moskow-Schnoll (No. 2900)
BALLARD SPAHR LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
Tel:   (302) 252-4447
Fax:   (302) 355-0221
Email: moskowb@ballardspahr.com

Neal Walters
BALLARD SPAHR LLP
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ 08043
Tel: (856) 761-3438
Email: waltersn@ballardspahr.com

*Attorneys for Twentieth Century Fox Home Entertainment LLC*

Dated: November 18, 2009

Dockets.Justia.com

## Table of Contents

Page

I.    INTRODUCTION ..............................................................................................................1

II.   ARGUMENT.....................................................................................................................3

      A.    Courts Routinely Transfer Cases To the Forum Where The Underlying
            Events Took Place..................................................................................................3

      B.    Redbox's Choice of Forum Does Not Overcome the Fact That This Case
            Has No Connection to Delaware.............................................................................5

      C.    Many of the Potential Witnesses and Documents Are In the Central
            District of California — None Is In Delaware........................................................7

      D.    Docket Conditions Favor Litigating In the Central District of California.............10

      E.    Redbox's Purported Justifications for Filing This Case In Delaware Are
            Not Persuasive. ....................................................................................................11

III.  CONCLUSION................................................................................................................15

## Table of Authorities

**Page(s)**

### Cases

*Ace Capital v. Varadam Found.*,
  392 F. Supp. 2d 671 (D. Del. 2005)............................................................................. 9, 10

*Adair v. Hunt Int'l Res. Corp.*,
  526 F. Supp. 736 (N.D. Ill. 1981) ................................................................................... 13

*Affymetrix v. Synteni, Inc.*,
  28 F. Supp. 2d 192 (D. Del. 1998)...................................................................... 5, 7, 9, 11

*Alcoa Inc. v. Alcan*, No. 06-451,
  2007 WL 1948821 (D. Del. July 2, 2007) ........................................................................ 9

*Automatic Washer Co. v. Easy Washing Machine Corp.*,
  91 F. Supp. 894 (N.D.N.Y. 1950)................................................................................... 15

*Burstein v. Applied Extrusion Techs., Inc.*,
  829 F. Supp. 106 (D. Del. 1992)....................................................................................... 6

*Chrysler Capital Corp. v. Woehling*,
  663 F. Supp. 478 (D. Del. 1987)..................................................................................... 13

*Commodity Futures Trading Comm'n v. Perkins*, No. 06-4674,
  2007 WL 2122029 (D.N.J. July 18, 2007)...................................................................... 13

*Coons v. Am. Horse Show Ass'n, Inc.*,
  533 F. Supp. 398 (S.D. Tex. 1982) ................................................................................... 6

*Cressman v. United Air Lines*,
  158 F. Supp. 404 (S.D.N.Y. 1958)................................................................................. 15

*Erbamont v. Cetus Corp.*,
  720 F. Supp. 387 (D. Del. 1989)..................................................................................... 13

*Firmani v. Clarke*,
  325 F. Supp. 689 (D. Del. 1971)..................................................................................... 13

*Fitzgerald v. Cent. Gulf Steamship Corp.*,
  292 F. Supp. 847 (E.D. Pa. 1968) ............................................................................. 6, 10

*Gen. Instrument Corp. v. Mostek Corp.*,
  417 F. Supp. 821 (D. Del. 1976)..................................................................................... 11

ii

Table of Authorities (con't)

Page(s)

*Glickenhaus v. Lytton Fin. Corp.*,
205 F. Supp. 102 (D. Del. 1962)....................................................................................... 11

*High River Ltd. P'ship v. Mylan Labs., Inc.*,
353 F. Supp. 2d 487 (M.D. Pa. 2005)................................................................................ 8

*IKOS Sys. v. Cadence Design Sys.*, No. 02-1335,
2002 WL 31414136 (D. Del. Oct. 21, 2002)................................................................... 11

*Imani v. U-Haul Int'l, Inc.*, No. 07-2231,
2007 WL 2595564 (E.D. Pa. Sept. 4, 2007) .............................................................. 6, 12

*Jacobs v. Tenney*,
316 F. Supp. 151 (D. Del. 1970)..................................................................................... 13

*Kirschner Bros. Oil, Inc. v. Pannill*,
697 F. Supp. 804 (D. Del. 1988)....................................................................................... 8

*Leonard v. Stemtech Health Scis., Inc.*, No. 08-67,
2008 WL 5381359 (D. Del. 2008)..................................................................................... 9

*Magee v. Essex-Tec Corp.*,
704 F. Supp. 543 (D. Del. 1988)..................................................................................... 11

*Mazinski v. Dight*,
99 F. Supp. 192 (W.D. Pa. 1951).................................................................................... 15

*Melone v. Boeing Co.*, No. 2:07-CV-1192,
2008 WL 877974 (D.N.J. Mar. 28, 2008).......................................................................... 6

*Nat'l Mortg. Network Inc. v. Home Equity Ctrs., Inc.*,
683 F. Supp. 116 (E.D. Pa. 1988) ..................................................................................... 3

*Pall Corp. v. Bentley Labs. Inc.*,
523 F. Supp. 450 (D. Del. 1981)..................................................................................... 11

*Pennwalt Corp. v. Purex Indus., Inc.*,
659 F. Supp. 287 (D. Del. 1986)................................................................................. 7, 11

*Prof'l Adjusting Sys. of Am., Inc. v. Gen. Adjustment Bureau, Inc.*,
352 F. Supp. 648 (E.D. Pa. 1972) .................................................................................. 4, 6

*Ricoh v. Honeywell, Inc.*,
817 F. Supp. 473 (D.N.J. 1993) ................................................................................... 6, 11

*Sadler v. Hallsmith SYSCO Food Servs.*, No. 08-4423,
2009 WL 1096309 (D.N.J. Apr. 21, 2009) ...................................................................... 10

Page(s)

*SAS of Puerto Rico v. Puerto Rico Tel. Co.*,
   833 F. Supp. 450 (D. Del. 1993) ........................................................................................ 4

*Scott Paper Co. v. Faucet-Queens, Inc.*, No. 86-493,
   1987 WL 28488 (D. Del. Jan. 14, 1987) .......................................................................... 11

*Sell v. Greyhound Corp.*,
   228 F. Supp. 134 (E.D. Pa. 1964) .................................................................................... 15

*Sherwood Med. Co. v. IVAC Med. Sys., Inc.*, No. 96-305,
   1996 WL 700261 (D. Del. Nov. 25, 1996) ...................................................................... 11

*SmithKline Corp. v. Sterling Drug Co., Inc.*,
   406 F. Supp. 52 (D. Del. 1975) ........................................................................................ 13

*Totonelly v. Cardiology Assocs. of Corpus Christi, Inc.*,
   932 F. Supp. 621 (S.D.N.Y. 1996) .................................................................................... 4

*U.S. ex rel. Davis v. Lockheed Martin Corp.*, No. 1:06-cv-13,
   2009 WL 3245444 (D.V.I. Oct. 5, 2009) .................................................................. 4, 8, 9

*Wagner v. N.Y. Marriott Marquis*,
   502 F. Supp. 2d 312 (N.D.N.Y. 2007) .............................................................................. 6

# I.     INTRODUCTION

Redbox's 17-page opposition brief does not identify any connection between Delaware
and the events, witnesses, or documents underlying the allegations in its Complaint. In fact,
Redbox concedes that (1) it retained Los Angeles-based consultants (both of whom are potential
third-party witnesses outside of this Court's subpoena power) to communicate with Fox;
(2) Redbox and Fox held five meetings in Los Angeles in the past two years to discuss the
parties' business relationship; (3) Fox business people, all of whom are headquartered in Los
Angeles, offered Redbox a multi-year deal to provide DVDs directly to Redbox on street date
that Redbox ultimately rejected; and (4) Fox's business decisions about DVD distribution to
Redbox were made in Los Angeles. All of these events occurred in the Central District of
California. None occurred in, from — or even near — the District of Delaware.

In an effort to diminish the connection between its Complaint and the Central District of
California, Redbox now asserts that its Los Angeles-based negotiations with Fox are somehow
irrelevant to this case. That argument is not credible. Redbox's own Complaint refers to the
failed negotiations. Moreover, the central allegation of Redbox's Complaint is that Fox has
boycotted, or refused to sell to, Redbox — an allegation that is completely undermined by the
offers Fox made to distribute its product to Redbox. Even if the Court were to focus on what
Redbox in its Answering Brief calls Fox's "directives" to distributors, any such "directives"
would have been issued from Los Angeles because that is where Fox sets and implements policy
for its U.S. DVD business.

Unable to link its Complaint to Delaware, Redbox argues that the Court should defer to
Redbox's choice of forum. While a plaintiff's choice of forum is a factor in a forum transfer
analysis, courts have repeatedly held that the factor is entitled to far less deference when the

1

forum the plaintiff selected has no connection to the events, witnesses, or documents underlying the dispute — as is the case here.

Finally, Redbox cannot defeat a transfer by relying on the fact that it sued a different defendant (Universal Studios) concerning different facts in Delaware 10 months before filing this case. Any purported efficiencies to be achieved by litigating these cases in the same forum are overstated. Cases addressing the pendency of related litigation on a motion to transfer typically focus on the fact that the prior action was filed against the *same defendant*, or at least that the claims turn on the *same facts*. Here, however, the defendants and the facts underlying Redbox's lawsuits are different. Moreover, Redbox does not explain what efficiencies, if any, are to be gained by litigating these cases in the same forum. For example, Redbox's complaint against Universal has survived a motion to dismiss, and the parties in that case have advanced into discovery. Thus, the Court has issued a scheduling order in the Universal case requiring, among other things, written discovery to be served by November 23, 2009 and responses to be served by January 29, 2010. By contrast, Redbox does not even have an operative complaint against Fox. Rather than file an Answering Brief to Fox's first motion to dismiss, Redbox has stated that it will file an amended complaint. Briefing on a motion to dismiss the amended complaint will not even be completed until February 4, 2010. And, obviously, if Fox's motion to dismiss is granted, any purported "efficiencies" would be nonexistent. In any event, the disconnect between Delaware and the events, witnesses, and documents underlying Redbox's claims outweighs Redbox's vague assertion of efficiencies.

In sum, this Court need not rubber stamp Redbox's chosen venue. Because Delaware concededly has no connection to the events, witnesses or documents related to this case and Los

2

Angeles is substantially connected, Fox's motion should be granted and this case transferred to
the Central District of California.

## II.    ARGUMENT

### A.    Courts Routinely Transfer Cases To the Forum Where The Underlying Events Took Place.

Redbox alleges that Fox has refused to sell to (or, as Redbox puts it, "boycotted")
Redbox, but the events underlying these claims demonstrate otherwise. Fox's opening brief
explained that Fox negotiated distribution terms with Redbox and made multiple offers to
provide Fox DVDs to Redbox both on street date and 30 days after street date. (Br.[1] at 5-8.)
Although the parties had agreed to many of the terms, they could not overcome the ▮▮▮▮-per-
DVD difference that separated the parties in the end. (*Id.* at 8.) Unable to reach an agreement on
price, the parties' negotiations broke down, and Redbox sued Fox six days later. (*Id.* at 9.)
Absent a distribution agreement, Fox could have decided to withhold DVDs from Redbox
altogether. Instead, Fox permitted its distributors (VPD and Ingram) to sell DVDs to Redbox 30
days after street date. (*Id.*)

Many of these events took place in and from Los Angeles. None took place in or from
Delaware. Thus, Redbox executives *met with Fox executives in Los Angeles* no less than five
times; Redbox *hired Los Angeles-based consultants* to visit with Fox in Los Angeles; and
Redbox *communicated with Fox at Fox's headquarters in Los Angeles.* (*Id.* at 5-9.) Case after
case finds that the location of the operative events underlying the litigation is a particularly
important factor justifying a venue transfer. *See, e.g., Nat'l Mortg. Network Inc. v. Home Equity
Ctrs., Inc.*, 683 F. Supp. 116, 119 (E.D. Pa. 1988) (transferring action to where "the alleged

---

[1]    "Br." refers to Fox's Opening Brief in Support of Its Motion to Transfer Venue to the Central
District of California (D.I. 20). "Ans. Br." refers to Redbox's Answering Brief in Opposition to
Fox's Motion to Transfer Venue (D.I. 28).

3

operative acts giving rise to this cause of action" occurred in the transferee forum, the principal

witnesses were in the transferee forum, and the documents were more likely to be found in or

near the transferee forum).[2]

Redbox does not, and cannot, argue that any of the events underlying its claims occurred

in Delaware. Instead, Redbox attempts to minimize the import of Los Angeles by pretending

that the parties' purported "failed contractual negotiations" have nothing to do with its case.

(Ans. Br. at 3, 10.) That argument has no merit for several reasons. *First*, Redbox's own

Complaint references these "failed contractual negotiations" in the context of alleging claims.

(*See* Compl. ¶ 36 ("Fox's attempt to choke off Redbox's supply of new-release DVDs follows a

failed attempt to require Redbox to end its 'dollar-a-night' pricing and to force Redbox to

substantially raise its prices to consumers. Redbox refused . . . .").) Having asserted the failed

negotiations as part of its Complaint, Redbox cannot now argue that those negotiations are

irrelevant. *Second*, Fox's offer to make its DVDs available to Redbox directly contradicts

Redbox's claim that it was foreclosed from obtaining Fox DVDs or that Fox somehow refused to

deal with Redbox. While Redbox might now prefer to ignore everything leading up to its

lawsuit, these facts are important to Fox's defense. *Third*, Redbox sued Fox just six days after

---

[2]  *See also Totonelly v. Cardiology Assocs. of Corpus Christi, Inc.*, 932 F. Supp. 621, 623
(S.D.N.Y. 1996) ("Courts routinely transfer cases where the principal events occurred, and the
principal witnesses are located in another district.") (citation omitted); *SAS of Puerto Rico v.
Puerto Rico Tel. Co.*, 833 F. Supp. 450, 451-52 (D. Del. 1993) (granting motion to transfer case
involving antitrust claims from Delaware to Puerto Rico where all related acts, including twenty-
five meetings between parties, took place in Puerto Rico) (*see also* Ans. Br. at 13 where Redbox
erroneously contends that the defendant was incorporated in Puerto Rico, when to the contrary,
the defendant, like here, was incorporated in Delaware (*SAS of Puerto Rico*, 833 F. Supp. at
451)); *Prof'l Adjusting Sys. of Am., Inc. v. Gen. Adjustment Bureau, Inc.*, 352 F. Supp. 648, 651
(E.D. Pa. 1972) (granting motion to transfer case involving antitrust claims where no witnesses
or no specific acts or evidence were in transferor forum); *U.S. ex rel. Davis v. Lockheed Martin
Corp.*, No. 1:06-cv-13, 2009 WL 3245444, at *2 (D.V.I. Oct. 5, 2009) (granting motion to
transfer where "the alleged events at the center of the dispute occurred in [the proposed
transferee forum]") (citation and internal quotation marks omitted).

4

the parties' negotiations failed; had Fox and Redbox agreed on distribution terms, there would be no Redbox action against Fox. *Fourth*, even if one accepts Redbox's current effort to define the issue in an artificially narrow manner — as involving only "Fox's directives to [VPD and Ingram] that they not sell to Redbox . . ." — transfer still would be warranted.  (Ans. Br. at 10.) Any "directives" Fox gave — and indeed the business decisions concerning those directives — concerning DVD-distribution to Redbox were made in Los Angeles and communicated to VPD and Ingram from Los Angeles. (Jeffries Decl. ¶¶ 17-18.)  Accordingly, any way one looks at it, the parties' communications, meetings, negotiations, Fox's business decisions, and any Fox "directives" to distributors all occurred in Los Angeles.  Thus, at a minimum, transfer is appropriate for the same reason it was ordered in a case Redbox cites four separate times in its brief: the "overwhelming majority" of the events underlying this case occurred in the forum to which transfer is sought (here the Central District of California). *See Affymetrix v. Synteni, Inc.*, 28 F. Supp. 2d 192, 196 (D. Del. 1998) (granting defendant's venue transfer motion where the "overwhelming majority of the events giving rise" to the lawsuit occurred in the proposed transferee forum) (cited by Redbox at Ans. Br. 4, 10, 14, 15).  In contrast, not one of the events at issue occurred in — or even near — Delaware.

**B.      Redbox's Choice of Forum Does Not Overcome the Fact That This Case Has No Connection to Delaware.**

Redbox spends much time trumpeting the unremarkable fact that Delaware is its choice of forum.  Nobody disputes that Redbox chose to sue in Delaware.  The relevant issue is how much deference to give that decision where Delaware has no connection to the parties, documents, witnesses, or events underlying the claims in this case.

Redbox argues that Fox ignores the law on this point by describing the plaintiff's choice of forum as something less than "paramount."  (Ans. Br. at 10.)  If the plaintiff's choice of forum

were always paramount, however, no case would ever be transferred. That is not the law.

Indeed, the cases establish that the plaintiff's choice of forum is entitled to far less deference

when the chosen forum has *no connection to the events underlying the case* — as is the case

here. Courts in this and other circuits have so held repeatedly. For example:

- The Eastern District of Pennsylvania granted a motion to transfer and gave the "plaintiff's choice of forum little weight" where none of the events related to the litigation occurred in the chosen forum. *See, e.g., Imani v. U-Haul Int'l, Inc.*, No. 07-2231, 2007 WL 2595564, at * 4 (E.D. Pa. Sept. 4, 2007).

- The District of New Jersey granted a motion to transfer and afforded plaintiff's choice of forum "little weight" where "[n]one of the central facts . . . occurred in New Jersey." *Melone v. Boeing Co.*, No. 2:07-CV-1192, 2008 WL 877974, at *2 (D.N.J. Mar. 28, 2008). *See also Ricoh v. Honeywell, Inc.*, 817 F. Supp. 473, 481 (D.N.J. 1993) ("When the central facts of a lawsuit occur outside the forum state, a plaintiff's selection of that forum is entitled to less deference.").

- The District of Delaware granted a motion to transfer where the chosen forum "ha[d] no connection to any of the acts giving rise to the lawsuit." *Burstein v. Applied Extrusion Techs., Inc.*, 829 F. Supp. 106, 110 (D. Del. 1992) (citations and internal quotation marks omitted). The court reasoned that since "the convenience to the plaintiff is not as great as it would be were [plaintiff] litigating at or near [plaintiff's] principal place of business or at the site of activities at issue in the lawsuit[,]" the "quantum of inconvenience to defendant needed to tip the balance strongly in favor of transfer is concomitantly reduced." *Id.*

- Citing the Eastern District of Pennsylvania, the Southern District of New York held that "where none of the operative facts of the action occur in the forum selected by the plaintiff, his choice of that forum certainly is entitled to less weight than is ordinarily the case." *Wagner v. N.Y. Marriott Marquis*, 502 F. Supp. 2d 312, 317 (N.D.N.Y. 2007) (citing *Fitzgerald v. Cent. Gulf Steamship Corp.*, 292 F. Supp. 847, 849 (E.D. Pa. 1968)).

- The Southern District of Texas has stated that "this deference to a plaintiff's choice of forum will be forsaken when the location of the defendants and witnesses, evidence, and the locus of operative events, all point to a venue other than that selected by the plaintiff." *Coons v. Am. Horse Show Ass'n, Inc.*, 533 F. Supp. 398, 400 (S.D. Tex. 1982) (citing, among other cases, *Prof'l Adjusting Sys. of Am., Inc.* (E.D. Pa.), *supra* n.2).

Regardless of whether a plaintiff's forum choice is given "little weight" (as the *Imani* and

*Melone* decisions describe it) or "less deference" (as the *Ricoh* decision describes it) or "less

weight" (as the *Wagner* decision describes it), the result is the same: the scale tips toward the

location of the operative events when a dispute has no factual connection to the chosen forum.

6

Indeed, the cases on which Redbox relies support this position. For example, Redbox cites
*Affymetrix* four times in its brief, yet that court, while noting the "paramount" consideration
given to plaintiff's forum choice, nonetheless **granted** defendant's venue transfer motion where
the "overwhelming majority of the events giving rise" to the lawsuit occurred in the proposed
transferee forum. *Id.* at 196. Further, in *Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287,
292 (D. Del. 1986) (cited five times in Redbox's Answering Brief (*see* Ans. Br. at 4, 12, 13, 14,
15); *see also* Br. at 12), the court **granted** defendant's motion to transfer venue to the Central
District of California where the "bulk of the negotiations preceding the agreement either took
place in California or were conducted by phone with one party located in California." *Id.*

## C.    Many of the Potential Witnesses and Documents Are In the Central District of California — None Is In Delaware.

Because the events underlying this case occurred in Los Angeles, it is not surprising that
the majority of the relevant witnesses and documents are also located there. In fact, Redbox does
not identify a single witness or document that is located in Delaware.

Redbox argues that the law's concern with witnesses only applies to third-parties who are
within the subpoena power of the transferee court (Ans. Br. at 13), but Fox has identified two
such witnesses. Both Messrs. Sowa and Brindze — third-party consultants who met with Fox on
Redbox's behalf — reside in Los Angeles within the subpoena power of the Central District of
California and outside of this Court's subpoena power. (Jeffries Decl. ¶ 12.) While Redbox
speculates that Messrs. Sowa and Brindze "will undoubtedly come to trial if Redbox so
requests," Redbox offers no declaration or other evidence supporting that position. In short,

these third-party witnesses who met with Fox on Redbox's behalf can be compelled to testify in Los Angeles, but not in Wilmington.[3]

Also relevant to this case is distributor VPD, and its employee Tom Kielty. To be sure, Mr. Kielty resides in the Eastern District of California. But to the extent he or other VPD witnesses will voluntarily appear at trial, it will be far easier for those witnesses to travel the short distance to Los Angeles, as compared to the 3,000-mile cross country trip to Wilmington.

In addition to these third-party witnesses, each of Fox's key executives who attended meetings and had discussions with Redbox work and reside in the Los Angeles area. (Jeffries Decl. ¶¶ 1, 7.) Similarly, the overwhelming majority of Fox's paper and electronic files are located in Los Angeles. (*Id.* ¶ 5.) By contrast, Redbox does not identify a single relevant witness or document that is located in, or even near, Delaware. While Redbox dismisses these facts as completely irrelevant to the venue transfer analysis (Ans. Br. at 13, 14), several courts acknowledge that the location of party witnesses and documents is a factor in deciding a venue transfer motion, particularly when the plaintiff's chosen venue has no connection to the events at issue in the case. *See, e.g., Kirschner Bros. Oil, Inc. v. Pannill,* 697 F. Supp. 804, 807 (D. Del. 1988) (granting motion to transfer pursuant to Section 1404(a) where "no witnesses reside[d] or conduct[ed] business in Delaware" and all of the relevant corporate records were located in the transferee forum) (citations omitted)); *see also High River Ltd. P'ship v. Mylan Labs., Inc.,* 353

---

[3]    Redbox suggests that having witnesses beyond this Court's subpoena power does not matter because "[d]eposition discovery . . . will take place wherever the witnesses and parties are, regardless of where the trial court is located . . . ." (Ans. Br. at 15 n.4) But this misses the mark. That depositions may be presented in lieu of trial testimony does not weigh in favor of denying transfer because Delaware is still an inconvenient forum. *See U.S. ex rel. Davis,* 2009 WL 3245444, at *3 (granting motion to transfer where no witnesses were in the selected forum). Besides, when live third-party testimony will undoubtedly be available in the Central District of California, the parties should not have to resort to the presentation of deposition transcripts and videos instead.

8

F. Supp. 2d 487, 498 (M.D. Pa. 2005) (granting motion to transfer where none of relevant documents were located in transferor court, and many of documents were prepared and located in transferee district).[4]

Although Redbox argues that the Court should ignore the inconvenience to Fox and its witnesses because Fox is a "multi-billion dollar corporation" (*see* Ans. Br. at 4), there is no "big company" exception to section 1404(a). In fact, where, as here, neither party is located in the plaintiff's chosen forum, a transfer motion should be granted even if a large defendant "can better absorb the costs of litigating" in the original forum. *See U.S. ex rel. Davis*, 2009 WL 3245444, at \*3. Redbox's own authority does not hold differently. *See Affymetrix, Inc.*, 28 F. Supp. 2d at 202, 208-209 (granting motion to transfer even though parties involved "[we]re all multi-million dollar corporations with interests and activities spanning the globe").

The cases on which Redbox relies where transfer was denied involve significantly different facts than those presented here. In *Leonard v. Stemtech Health Scis., Inc.*, No. 08-67, 2008 WL 5381359 (D. Del. 2008), for example, plaintiff lived in New York—"only a short drive or train ride away from Delaware." *Id.* at \*2 (finding persuasive plaintiff's decision to litigate "*in a state near his home state* that also happens to be [defendant's] state of incorporation") (emphasis added). By contrast, Redbox is located in Illinois — approximately 600 miles away from Delaware — and thus cannot claim that it chose to file in Delaware because it is a neighboring state. In *Alcoa Inc. v. Alcan*, No. 06-451, 2007 WL 1948821 (D. Del. July 2, 2007), Delaware also was close to the plaintiff's New York principal place of business, and the dispute involved a contract governed by Delaware law. *Id.* at \*4. In *Ace Capital v. Varadam Found.*,

---

4  *See also U.S. ex rel. Davis*, 2009 WL 3245444, at \*3 (granting motion to transfer where defendant "notes that no witnesses located in the [transferor forum] have been identified by [p]laintiff . . . and that [d]efendant is aware of none") (citation and internal quotation marks omitted).

9

392 F. Supp. 2d 671 (D. Del. 2005), unlike here, there were doubts as to whether the dispute "could have been brought initially in [the proposed transferee forum]." *Id.* at 675. And in *Sadler v. Hallsmith SYSCO Food Servs.*, No. 08-4423, 2009 WL 1096309 (D.N.J. Apr. 21, 2009), two of the individual plaintiffs resided in New Jersey, some of the plaintiffs' witnesses were located in New Jersey, and the defendants failed to specifically identify any potential witnesses in the proposed transferee forum. *Id.* at *4-5.

In short, relevant third-party witnesses are located in or near the Central District of California; Fox's employees and executives relevant to the case are located in the Central District of California; the Central District of California is the location of many relevant documents; Redbox is located in Illinois, 600 miles from Delaware; and Redbox has not identified any third-party or party witnesses in, or even near, Delaware justifying its choice of forum. Los Angeles is by far the more logical and convenient forum.

**D.     Docket Conditions Favor Litigating In the Central District of California.**

Fox's Opening Brief cited statistics demonstrating that the Central District of California has a shorter median time from filing to trial and a shorter median time from filing to disposition than does the District of Delaware. (Br. at 16.) Redbox concedes that the Central District of California's docket conditions favor transfer (Ans. Br. at 4) but labels this factor "immaterial." (*Id.*) Courts, however, hold otherwise. *See, e.g., Fitzgerald*, 292 F. Supp. at 850 ("A final compelling consideration is that if the case is transferred the likelihood is that it will have been tried and finally disposed of in the transferee court approximately fourteen months before it could even have been reached for trial in this Court.") (footnote reference omitted). Taken together with the factors identified above, the preferable docket conditions in the Central District of California favor transfer.

10

**E.**     **Redbox's Purported Justifications for Filing This Case In Delaware Are Not Persuasive.**

The reasons Redbox offers for filing in Delaware do not warrant denial of Fox's transfer

motion. Redbox has offered three reasons for its choice of forum: "(1) both Redbox and Fox

chose to be incorporated in Delaware, (2) Delaware is a well-recognized and appropriate forum

in which to resolve business-related disputes, and (3) the Universal action was already pending

before this Court when Redbox filed suit against Fox." (Ans. Br. at 10.) None of these

explanations justifies litigating this case in Delaware.

The parties' respective incorporation in Delaware does not control the transfer analysis.

*See, e.g., Glickenhaus v. Lytton Fin. Corp.*, 205 F. Supp. 102, 106 (D. Del. 1962) ("That

Delaware is plaintiff's choice of forum and defendant's state of incorporation are legal facts

which, standing alone, do not control the theatre of litigation").[5] Again, Redbox's own authority

is in accord. *Affymetrix, Inc.*, 28 F. Supp. 2d at 194 (granting motion to transfer despite fact that

defendants were incorporated in Delaware). This is especially true where, as here, none of the

relevant events occurred in Delaware. *See, e.g., IKOS Sys. v. Cadence Design Sys., Inc.*, No. 02-

---

[5]     *See also Imani*, 2007 WL 2595564, at *5 (granting motion to transfer venue even though two
of defendants were incorporated in Delaware); *Gen. Instrument Corp. v. Mostek Corp.*, 417 F.
Supp. 821, 824 n.6 (D. Del. 1976) (granting motion to transfer where both plaintiff and
defendant were incorporated in Delaware and noting that "[t]he mere fact that Delaware is the
plaintiffs' choice of forum and the defendant's state of incorporation will not, standing alone,
prevent this Court from transferring the suit to another forum") (citations omitted); *Magee v.
Essex-Tec Corp.*, 704 F. Supp. 543, 545 (D. Del. 1988) (granting motion to transfer even though
defendant was incorporated in Delaware); *Pall Corp. v. Bentley Labs. Inc.*, 523 F. Supp. 450,
452 (D. Del. 1981) (same); *Pennwalt Corp.*, 659 F. Supp. at 288 (granting motion to transfer
venue where defendant was incorporated in Delaware, but had its principal place of business in
Central District of California); *Ricoh Co.*, 817 F. Supp. at 475 (granting motion to transfer even
though defendant was incorporated in Delaware); *Scott Paper Co. v. Faucet-Queens, Inc.*, No.
86-493, 1987 WL 28488, at *1 (D. Del. Jan. 14, 1987) (granting motion to transfer venue even
though defendant was incorporated in Delaware); *Sherwood Med. Co. v. IVAC Med. Sys., Inc.*,
No. 96-305, 1996 WL 700261, at *1 (D. Del. Nov. 25, 1996) (granting motion to transfer even
though both defendant and plaintiff were incorporated in Delaware).

1335, 2002 WL 31414136, at *5 (D. Del. Oct. 21, 2002) (transferring case to Northern District of California because there was little connection between Delaware and the action or parties, even where parties were incorporated in Delaware); *see also Imani*, 2007 WL 2595564 at *5 (granting motion to transfer venue even though two of defendants were incorporated in Delaware, where underlying events took place in proposed transferee forum).

Likewise, while the District of Delaware is a recognized forum for resolving commercial disputes, so is the Central District of California. In fact, federal courts in Los Angeles are accustomed to commercial disputes arising in the entertainment industry, and they address significant business and antitrust disputes all the time. For example, in 2008, 12,130 civil cases were filed in the Central District of California, including 113 antitrust cases, more than 1,500 contract cases, and more than 1,300 copyright/patent/trademark cases. (*See* Declaration of Tammy Tsoumas ("Tsoumas Decl.") ¶ 2, Ex. 1.) Redbox presents no evidence that the Central District of California is not recognized or is otherwise not accustomed to handling this type of business dispute.[6]

Finally, Redbox overstates the importance of its having previously filed a case against Universal Studios in Delaware. *First*, it is unlikely that significant efficiencies in discovery will be achieved given that the claims and defenses in Redbox's case against Universal rely on different facts, witnesses, and documents than the claims and defenses in this case. As an initial matter, if Fox's motion to dismiss is granted, any purported "efficiencies" would be nonexistent.[7]

---

[6]   In contrast, 984 civil cases were filed in Delaware in 2008, comprised in part of 22 antitrust cases, 95 contract cases, and 214 copyright/patent/trademark cases. (Tsoumas Decl. ¶ 2, Ex. 1.)

[7]   *See, e.g., Erbamont Inc. v. Cetus Corp.*, 720 F. Supp. 387, 396 (D. Del. 1989) (denying transfer motion where motion to dismiss in related case was pending in proposed transferee court and therefore, if transferee "court dismiss[ed] [certain] parties, . . . interests of judicial economy" would not be served) (cited by Redbox (Ans. Br. at 13 n.6 & 14)).

In any event, Universal was not a party to the negotiations between Fox and Redbox (just as Fox was not a party to any negotiations between Universal and Redbox). Likewise, to the extent Redbox would frame its case on any instructions Fox gave to distributors, that too would involve different decisions and communications than would be at issue in Redbox's case against Universal. Moreover, Redbox's complaint against Universal alleges different facts than does Redbox's complaint against Fox. And so on. The factual development of these cases, therefore, will have little to do with each other.

*Second*, the cases on which Redbox relies involve lawsuits against the *same defendant* or involving the *same facts*.[8] Here, unlike every case Redbox cites, there are different defendants, different sets of facts, different witnesses, and different documents. Given that the defendants in the three cases compete against each other, any effort to coordinate discovery will be complicated by concerns each defendant is likely to have with its confidential business information becoming available to its competitors.

*Third*, Redbox's case against Universal was filed 10 months before this case and is at a different stage. The parties in the Universal matter already briefed a Rule 12 motion; the Court

---

[8]  *See, e.g., Jacobs v. Tenney*, 316 F. Supp. 151, 169 (D. Del. 1970) (related cases involved "same underlying course of conduct by" at least one of the same defendants) (Ans. Br. at 16); *Chrysler Capital Corp. v. Woehling*, 663 F. Supp. 478, 483 (D. Del. 1987) (related case involved same parties and was based on same underlying sale) (Ans. Br. at 16); *SmithKline Corp. v. Sterling Drug Co., Inc.*, 406 F. Supp. 52, 55 (D. Del. 1975) (related case involved "virtually identical" issues involving same patents) (Ans. Br. at 16); *Firmani v. Clarke*, 325 F. Supp. 689, 692-693 (D. Del. 1971) (related cases were based upon the "same transactions and alleged misrepresentations" by same defendant) (Ans. Br. at 16); *Adair v. Hunt Int'l Res. Corp.*, 526 F. Supp. 736, 742 (N.D. Ill. 1981) (related cases involved same defendants or related entities) (Ans. Br. at 2, 17); *Commodity Futures Trading Comm'n v. Perkins*, No. 06-4674, 2007 WL 2122029 (D.N.J. July 18, 2007) (related case involved same alleged fraud such that facts were "heavily intertwined") (Ans. Br. at 2, 17). Even *Erbamont v. Cetus Corp.*, 720 F. Supp. 387, 396 (D. Del. 1989), which Redbox separately calls out attempting to diffuse the fact that the Universal, Warner and Fox actions involve *different defendants* (Ans. Br. at 17 n.5), involved litigation over the same patent.

13

has decided the motion; Universal has filed a petition to appeal the order; the parties have filed a Rule 26(f) joint discovery plan; the parties have engaged in a Rule 16 conference; and, the Court has issued a scheduling order calling for, among other things, a deadline for written discovery requests and answers thereto, a meet and confer regarding electronic discovery issues, and a deadline regarding exchanging privilege logs for paper documents. (D.I. 15, 16, 33, 40, 41, 43, 46, 56, 57, 65, 69, 71, 73 in Case No. 08-766.) By contrast, in response to Fox's motion to dismiss, Redbox has notified this Court of its intent to amend its Complaint against Fox. (D.I. 29.) Briefing on a Rule 12 motion directed to the amended complaint will not even begin until December 21, 2009 and will not be complete until February 4, 2010, with the Court presumably needing time to analyze the motion and render a decision. (*Id.*) The Universal case, therefore, is on a different schedule than the case here, which undermines the notion of achieving efficiencies by litigating in the same district.

*Fourth*, Redbox's attempt to justify its forum choice based on the pending Universal action turns venue transfer analysis on its head. According to Redbox, Fox should be forced to litigate in an inconvenient forum simply because Redbox previously filed a case against a *different defendant*, which also has no connection to Delaware. If that was the law, then a plaintiff could choose any inconvenient forum and defeat a motion to transfer venue by bringing *two* lawsuits against different defendants unconnected to the forum, instead of just one. The law does not support this result. *See Cressman v. United Air Lines*, 158 F. Supp. 404, 407 (S.D.N.Y. 1958) (granting motion to transfer even though similar actions were pending in transferor district where moving party had made a "strong showing of inconvenience") (citations omitted); *cf. Sell v. Greyhound Corp.*, 228 F. Supp. 134, 136 (E.D. Pa. 1964) (denying motion to transfer even though several other cases arising out of the same accident were pending in proposed transferee

14

forum); *Mazinski v. Dight*, 99 F. Supp. 192, 194 (W.D. Pa. 1951) (denying motion to transfer where related case was pending in proposed transferee forum because this factor "would not in itself justify a transfer, especially in light of the fact that [the parties are not the same]"));

*Automatic Washer Co. v. Easy Washing Machine Corp.*, 91 F. Supp. 894, 896 (N.D.N.Y. 1950) (denying motion to transfer where similar case pending in proposed transferee forum where parties were not same and "[t]he acts complained of were performed by different parties in each case").

In the end, this motion comes down to whether Redbox should be permitted to file a lawsuit in a forum that has no connection (other than being the state of incorporation) to the defendant, the plaintiff, third-party witnesses, or the events underlying the claims and defenses in the case just because Redbox also filed an action against another defendant (Universal) 10 months earlier that similarly has no connection to Delaware. On balance, the facts strongly favor transferring this action to the Central District of California.

## III. CONCLUSION

Redbox's choice of an inconvenient forum having no connection to the parties or events underlying this case does not justify saddling Fox with cross-country litigation. Accordingly, Fox requests that the Court transfer this case to the United States District Court for the Central District of California.

15

Dated: November 18, 2009                    Respectfully submitted,

                                            /s/ Beth Moskow-Schnoll
                                            Beth Moskow-Schnoll (No. 2900)
                                            BALLARD SPAHR LLP
                                            919 North Market Street, 12th Floor
                                            Wilmington, DE 19801
                                            Tel:    (302) 252-4447
                                            Fax:    (302) 355-0221
                                            Email: moskowb@ballardspahr.com

                                            Neal Walters
                                            BALLARD SPAHR LLP
                                            Plaza 1000 - Suite 500
                                            Main Street
                                            Voorhees, NJ 08043
                                            Tel: (856) 761-3438
                                            Email: waltersn@ballardspahr.com

                                            *Attorneys for Twentieth Century Fox Home
                                            Entertainment LLC*

                                            OF COUNSEL

                                            Yosef Riemer (*admitted pro hac vice*)
                                            KIRKLAND & ELLIS LLP
                                            601 Lexington Avenue
                                            New York City, NY 10022
                                            Tel: (212) 446-4802
                                            Email: yosef.riemer@kirkland.com

                                            Corey C. Watson (*admitted pro hac vice*)
                                            KIRKLAND & ELLIS LLP
                                            777 South Figueroa Street
                                            Los Angeles, CA 90017
                                            Tel: (213) 680-8482
                                            Email: corey.watson@kirkland.com

16

## CERTIFICATE OF SERVICE

I, Beth Moskow-Schnoll, hereby certify that on November 18, 2009, I electronically filed

the foregoing Twentieth Century Fox Home Entertainment LLC's Reply Brief In Support Of Its

Motion To Transfer Venue To The Central District Of California with the Clerk of the Court

using CM/ECF, which will send notification of such filing to the following:

> Henry E. Gallagher, Jr.
> Chad S. C. Stover
> CONNOLLY BOVE LODGE & HUTZ LLP
> The Nemours Building
> 1007 North Orange Street
> Wilmington, DE 19899
> Tel: (302) 888-6288
> Fax: (302) 658-0380
> Email: hgallagher@cblh.com

> /s/ Beth Moskow-Schnoll
> Beth Moskow-Schnoll (No. 2900)