## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| REDBOX AUTOMATED RETAIL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 09-592-RBK |
| vs. | ) | |
| | ) | |
| TWENTIETH CENTURY FOX HOME | ) | |
| ENTERTAINMENT, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## TWENTIETH CENTURY FOX HOME ENTERTAINMENT LLC'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS REDBOX'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)

OF COUNSEL:

Yosef J. Riemer (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York City, NY 10022
Tel: (212) 446-4802
Email: yosef.riemer@kirkland.com

Corey C. Watson (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Tel: (213) 680-8482
Email: corey.watson@kirkland.com

Beth Moskow-Schnoll (No. 2900)
BALLARD SPAHR LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
Tel:    (302) 252-4447
Fax:   (302) 355-0221
Email: moskowb@ballardspahr.com

Neal Walters
BALLARD SPAHR LLP
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ 08043
Tel: (856) 761-3438
Email: waltersn@ballardspahr.com

*Attorneys for Twentieth Century Fox Home Entertainment LLC*

Dated:  December 21, 2009

# TABLE OF CONTENTS

Page No.

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS.................................1

INTRODUCTION ......................................................................................................................2

SUMMARY OF THE ARGUMENT .......................................................................................6

STATEMENT OF THE ALLEGATIONS ................................................................................7

ARGUMENT.............................................................................................................................9

I.     Redbox Fails to State a Claim Under Section 1 of the Sherman Act. ...............................11

     A.     Redbox Has Not Pled a "Contract, Combination . . . or Conspiracy" Under
          Section 1....................................................................................................................11

          1.     Redbox Does Not Plead Any Facts Demonstrating An Agreement
                  Between Fox and Either VPD or Ingram To Refuse Sales To
                  Redbox. ..................................................................................................12

          2.     Redbox Does Not Plead Facts Demonstrating An Agreement
                  Between Fox and Any Retailer To Refuse Sales To Redbox. ....................16

     B.     Redbox Cannot Plead an Unlawful "Restraint of Trade." ......................................17

          1.     Redbox Has Not, And Cannot, Plead That Fox's Distribution
                  Policy Harms *Inter-brand* Competition for DVD Rentals.........................20

          2.     Redbox's Allegations Of Injury to Itself and Injury to *Intra-brand*
                  Competition Do Not Satisfy the Requirement of Pleading Harm to
                  Competition..............................................................................................24

     C.     Redbox Asserts An Implausible Market Definition.................................................27

II.    Redbox's Copyright Misuse Claim (Count I) Fails Because Copyright Misuse Is
     an Affirmative Defense, Not a Claim. ................................................................................34

III.   Redbox's Tortious Interference With Contract Claim (Count VI) Fails Because
     Redbox Cannot Allege That Ingram or VPD Breached Their Contract With
     Redbox. ..............................................................................................................................35

IV.   Redbox's Tortious Interference With Prospective Business Opportunity (Count
     VII) And Unfair Competition (Count VIII) Claims Fail As A Matter Of Law. ...............36

CONCLUSION........................................................................................................................39

i

## TABLE OF AUTHORITIES

**Page No(s).**

### Cases

*Alberta Gas Chems., Ltd., v. E.I. Du Pont De Nemours and Co.*,
  826 F.2d 1235 (3d Cir. 1987)............................................................................................. 25

*Altera Corp. v. Clear Logic, Inc.*,
  424 F.3d 1079 (9th Cir. 2005) ......................................................................................... 34

*Alvord-Polk, Inc. v. F. Schumacher & Co.*,
  37 F.3d 996 (3d Cir. 1994)............................................................................................... 11

*Am. Airlines v. Christensen*,
  967 F.2d 410 (10th Cir. 1992) ......................................................................................... 13

*Arista Records v. Flea World, Inc.*,
  356 F. Supp. 2d 411 (D.N.J 2005) ................................................................................... 35

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009)............................................................................................. passim

*Associated Gen. Contractors v. Cal. State Counsel of Carpenters*,
  459 U.S. 519 (1983).......................................................................................................... 26

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................. passim

*Bldg. Materials Corp. of Am. v. Rotter*,
  535 F. Supp. 2d 518 (E.D. Pa. 2008) ............................................................................... 32

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993).......................................................................................................... 24

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962).......................................................................................................... 25

*Brunson Commc'ns, Inc. v. Arbitron, Inc.*,
  239 F. Supp. 2d 550 (E.D. Pa. 2002) ............................................................................... 32

*Burtch v. Milberg Factors, Inc.*, No. 07-556,
  2009 WL 840589 (D. Del. Mar. 30, 2009) ....................................................................... 15

*Carell v. Shubert Org., Inc.*,
  104 F. Supp. 2d 236 (S.D.N.Y. 2000)............................................................................... 28

# TABLE OF AUTHORITIES

**Page No(s).**

*Conley v. Gibson,*
  355 U.S. 41 (1957)..................................................................................................... 9

*Cont'l T.V. Inc. v. GTE Sylvania, Inc.,*
  433 U.S. 36 (1977)............................................................................................... 18, 19

*Copperweld Corp. v. Independence Tube Corp.,*
  467 U.S. 752 (1984)................................................................................................. 12

*Cosmetic Gallery, Inc. v. Schoeneman Corp.,*
  495 F.3d 46 (3d Cir. 2007)....................................................................................... 11

*Crane & Shovel Sales Corp v. Bucyrus-Erie Co.,*
  854 F.2d 802 (6th Cir. 1988) ................................................................................... 24

*Cupp v. Alberto-Culver USA, Inc.,*
  310 F. Supp. 2d 963 (W.D. Tenn. 2004).................................................................. 33

*Delaware Solid Waste Auth. v. E. Shore Envtl., Inc.,* No. 1472-K,
  2002 WL 537691 (Del. Ch. Mar. 28, 2002)........................................................ 37, 38

*Dura Pharms., Inc. v. Broudo,*
  544 U.S. 336 (2005)................................................................................................. 10

*E. Food Servs., Inc. v. Pontificial Catholic Univ. Servs. Ass'n, Inc.,*
  357 F.3d 1 (1st Cir. 2004)........................................................................................ 18

*Eastman Kodak Co. v. Image Technical Ins. Servs.,*
  504 U.S. 451 (1992)................................................................................................. 29

*Electronics Commc'ns Corp. v. Toshiba Am. Consumer Prods.,*
  129 F.3d 240 (2d Cir. 1997)..................................................................................... 20

*E-Z Bowz, LLC v. Prof'l Prod. Research Co.,* No. 00 8670,
  2003 WL 22068573 (S.D.N.Y. Sept. 5, 2003)........................................................ 28

*Fisher v. City of Berkeley, California,*
  475 U.S. 260 (1986)................................................................................................. 11

*Floors-N-More, Inc. v. Freight Liquidators,*
  142 F. Supp. 2d 496 (S.D.N.Y. 2001)...................................................................... 27

*Fowler v. UPMC Shadyside,*
  578 F.3d 203 (3d Cir. 2009).............................................................................. passim

# TABLE OF AUTHORITIES

**Page No(s).**

*Futurevision Cable Sys. of Wiggins, Inc. v. Multivision Cable TV Corp.*,
789 F. Supp. 760 (S.D. Miss. 1992)................................................................................... 24

*George Haug Co. v. Rolls Royce Motor Cars, Inc.*,
148 F.3d 136 (2d Cir. 1998)............................................................................................. 25

*Gordon v. Lewistown Hosp.*,
423 F.3d 184 (3d Cir. 2005)............................................................................................. 18

*Habitat, Ltd. v. Art of the Muse, Inc.*, No. 07-CV-2883,
2009 WL 803380 (E.D.N.Y. Mar. 25, 2009)..................................................................... 27

*Hack v. President and Fellows of Yale College*,
237 F.3d 81 (2d Cir. 2000)............................................................................................... 30

*IDT Corp. v. Bldg. Owners & Managers Ass'n Int'l*, No. 03-4113,
2005 WL 3447615 (D.N.J. Dec. 15, 2005)................................................................. 18, 25

*Illinois Tool Works, Inc. v. Indep. Ink, Inc.*,
547 U.S. 28 (2006)........................................................................................................... 29

*In re Fedders N.A., Inc.*,
405 B.R. 527 (Bankr. D. Del. 2009) ................................................................................ 38

*In re Frederick's of Hollywood, Inc. Shareholders Litig.*,
No. 15944, 1998 WL 398244 (Del. Ch. July 9, 1998)......................................... 35, 36, 37

*In re NAHC, Inc. Secs.*,
306 F.3d 1314 (3d Cir. 2002)........................................................................................... 22

*Int'l Logistics Group, Ltd. v. Chrysler Corp.*,
884 F.2d 904 (6th Cir. 1989) ..................................................................................... 13, 15

*Jala v. W. Auto Supply Co.*, Civ. No. 95-100-P-H,
1995 WL 463683 (D. Me. July 26, 1995)........................................................................ 13

*K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*,
61 F.3d 123 (2d Cir. 1995)............................................................................................... 20

*Karnuth v. Rodale, Inc.*, No. 03-742,
2005 WL 747251 (E.D. Pa. Mar. 30, 2005)..................................................................... 14

*Lum v. Bank of Am.*,
361 F.3d 217 (3d Cir. 2004)............................................................................................. 21

# TABLE OF AUTHORITIES

Page No(s).

*Luscavage v. Dominion Dental USA, Inc.,*
  No. 06C-07-219, 2007 WL 901641 (Del. Super. Ct. Mar. 20, 2007).............................. 36

*Mathews v. Lancaster Gen. Hosp.,*
  87 F.3d 624 (3d Cir. 1996).......................................................................................... 25

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
  269 F. Supp. 2d 1213 (C.D. Cal. 2003) ....................................................................... 34

*Monsanto Co. v. Spray-Rite Serv. Corp.,*
  465 U.S. 752 (1984)......................................................................................... 11, 13, 20

*Nat'l Indep. Theatre Exhibitors, Inc. v. Charter Fin. Group, Inc.,*
  747 F.2d 1396 (11th Cir. 1984) ................................................................................... 20

*Olde Monmouth Stock Transfer Co., Inc. v. Depository Trust & Clearing Corp.,*
  485 F. Supp. 2d 387 (S.D.N.Y. 2007)........................................................................... 16

*Online Policy Group v. Diebold, Inc.,*
  337 F. Supp. 2d 1195 (N.D. Cal. 2004) ....................................................................... 34

*Orson Inc. v. Miramax Film Corp.,*
  79 F.3d 1358 (3d Cir. 1996)................................................................................... 18, 19

*Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.,*
  129 S. Ct. 1109 (2009)............................................................................................ 17, 39

*Patterson v. Charter Fin. Group, Inc.,*
  471 U.S. 1056 (1985).................................................................................................... 20

*Perry v. Rado,*
  504 F. Supp. 2d 1043 (E.D. Wash. 2007)..................................................................... 25

*Premium Mortgage Corp. v. Equifax, Inc.,*
  583 F.3d 103 (2d Cir. 2009).......................................................................................... 38

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.,*
  124 F.3d 430 (3d Cir. 1997)............................................................................... 28, 31, 33

*R.J. Reynolds Tobacco Co. v. Philip Morris, Inc.,*
  199 F. Supp. 2d 362 (M.D.N.C. 2002) ......................................................................... 19

*Re/Max Int'l, Inc. v. Smythe, Cramer Co.,*
  265 F. Supp. 2d 882 (N.D. Ohio 2003).......................................................................... 13

# TABLE OF AUTHORITIES

**Page No(s).**

*Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.,*
  812 F. Supp. 387 (S.D.N.Y. 1993).................................................................................... 30

*Redbox Automated Retail LLC v. Universal City Studios LLP, et al.,*
  Civ. No. 08-766, Opinion, dated 8/17/09 ................................................................ 3, 8, 19

*Rick-Mik Enters., Inc. v. Equilon Enters., LLC,*
  532 F.3d 963 (9th Cir. 2008) .......................................................................................... 29

*Rosenberg v. XM Ventures,*
  129 F. Supp. 2d 681 (E.D. Pa. 1988) .............................................................................. 22

*Rossi v. Standard Roofing, Inc.,*
  156 F.3d 452 (3d Cir. 1998)............................................................................................ 11

*Rutman Wine Co. v. E. & J. Gallo Winery,*
  829 F.2d 729 (9th Cir. 1987) .......................................................................................... 25

*Sands v. McCormick,*
  502 F.3d 263 (3d Cir. 2007)............................................................................................ 35

*Seaboard Supply Co. v. Congoleum Corp.,*
  770 F.2d 367 (3rd Cir. 1985) .......................................................................................... 20

*Seagood Trading Corp. v. Jerrico, Inc.,*
  924 F.2d 1555 (11th Cir. 1991) ................................................................................. 20, 23

*Shaw v. Rolex Watch, U.S.A., Inc.,*
  673 F. Supp. 674 (S.D.N.Y. 1987)................................................................................... 29

*Southmark Prime Plus, L.P. v. Falzone,*
  776 F. Supp. 888 (D. Del. 1991)...................................................................................... 22

*Spahr v. Leegin Creative Leather Prods., Inc.,* No. 2:07-CV-187,
  2008 WL 3914461 (E.D. Tenn. Aug. 20, 2008) .............................................................. 30

*Stark v. Ear Nose & Throat Specialists of Northwestern Penn.,*
  185 Fed. Appx. 120 (3d Cir. 2006 .................................................................................. 11

*Swierkeiwicz v. Sorema,*
  534 U.S. 506 (2002)........................................................................................................ 30

*Sybersound Records, Inc. v. UAV Corp.,*
  517 F.3d 1137 (9th Cir. 2008) ........................................................................................ 38

**TABLE OF AUTHORITIES**

Page No(s).

*Syncsort Inc. v. Sequential Software, Inc.,*
  50 F. Supp. 2d 318 (D.N.J. 1999) ................................................................................... 31

*Tampa Elec. Co. v. Nashville Coal Co.,*
  365 U.S. 320 (1961) ....................................................................................................... 18

*Theatre Party Assocs., Inc. v. Shubert Org., Inc.,*
  695 F. Supp. 150 (S.D.N.Y. 1988) ................................................................................ 29

*Ticketmaster, L.L.C. v. RMG Techs., Inc.,*
  536 F. Supp. 2d 1191 (C.D. Cal. 2008) ........................................................................ 34

*Tidmore Oil Co., Inc. v. BP Oil Co./Gulf Prods. Div.,*
  932 F.2d 1384 (11th Cir. 1991) ..................................................................................... 20

*Tigard Elec. v. Nat'l Elec. Contractors Ass'n,*
  790 F. Supp. 1498 (D. Or. 1992) ................................................................................... 25

*Toscano v. Prof'l Golfers Ass'n,*
  258 F.3d 978 (9th Cir. 2001) ......................................................................................... 13

*TV Commc'ns Network, Inc. v. Tuner Network Television, Inc.,*
  964 F.2d 1022 (10th Cir. 1992) ..................................................................................... 30

*U.S. ex rel. Lobel v. Express Scripts, Inc.,* No. 09-0147,
  2009 WL 3748805 (3d Cir. Nov. 10, 2009) ..................................................................... 9

*UGG Holdings v. Severn,* No. 04-1137,
  2004 WL 5458426 (C.D. Cal. Oct. 1, 2004) .................................................................. 30

*United States v. Colgate & Co.,*
  250 U.S. 300 (1919) ....................................................................................... 12, 13, 17, 39

*United States v. E.I. du Pont de Nemours & Co.,*
  351 U.S. 377 (1956) ....................................................................................................... 28

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.,*
  342 F.3d 191 (3d Cir. 2003) ........................................................................................... 34

*W. Penn Allegheny Health Sys., Inc. v. UPMC,* No. 09cv0480,
  2009 WL 3601600 (W.D. Pa. Oct. 29, 2009) ................................................................ 10

*Warfield Philadelphia, L.P. v. Nat'l Passenger R.R. Corp.,* No. 09-1002,
  2009 WL 4043112 (E.D. Pa. Nov. 20, 2009) ................................................................ 10

## TABLE OF AUTHORITIES

**Page No(s).**

*Waris v. HCR Manor Care,*
No. 07-3344, 2008 WL 5352278 (E.D. Pa. Dec. 17, 2008)..............................................22

**Statutes**

28 U.S.C. § 1404................................................................................................................1

The Sherman Act, 15 U.S.C. § 1.................................................................................... passim

**Other Authorities**

11 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1802b ..........................................21

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

On August 11, 2009, Redbox Automated Retail, LLC ("Redbox") sued Twentieth Century Fox Home Entertainment LLC ("Fox") alleging copyright misuse, tortious interference with contract and violations of Section 1 of the Sherman Act. On October 1, 2009, Fox filed two motions. First, Fox moved to transfer this action under 28 U.S.C. § 1404 to the Central District of California — a far more convenient forum than the District of Delaware.[1]  Second, Fox moved to dismiss Redbox's Complaint under Fed. R. Civ. P. 12(b)(6). Among other things, Fox argued that the Section 1 claims should be dismissed because the parties' unsuccessful attempt to negotiate an agreement and Fox's unilateral distribution policy with wholesale distributors did not state a Section 1 claim as a matter of law. Rather than oppose Fox's motion to dismiss, Redbox filed its Amended Complaint on November 30, 2009.[2]  The Amended Complaint does not, and cannot, cure the problems with Redbox's Section 1 claims. In fact, not only has Redbox failed to cure the deficiencies in its original claims (or to drop those claims), but Redbox has added new counts alleging tortious interference with prospective business opportunity and unfair competition. Neither of those new counts meets applicable pleading requirements and, like the other counts, they should be dismissed. Accordingly, Fox moves to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6).

---

[1]  As described more fully in Fox's venue transfer motion, Fox's Los Angeles based employees met multiple times over the past several years in Los Angeles with Redbox and its Los Angeles based consultants to discuss the parties' business relationship. These discussions culminated in Fox offering Redbox a multi-year distribution agreement (in which Fox would have supplied all its DVD releases to Redbox on the day those DVDs came out), but Fox and Redbox could not agree on price. If the Court grants the venue transfer motion, it need not rule on Fox's motion to dismiss.

[2]  "Amended Complaint" refers to the amended complaint filed by Redbox against Fox in this case dated November 30, 2009. (D.I. 38.)

1

## INTRODUCTION

Redbox's central claim — that Fox "boycotted" Redbox — is belied by the Amended Complaint itself, which shows that Fox tried to negotiate a contract to provide DVDs *directly* to Redbox. After months of negotiations, the parties could not agree on price. When the negotiations reached an impasse, Fox had the right to stop selling DVDs to Redbox altogether. Rather than ending all sales to Redbox, Fox unilaterally changed its distribution policy to permit its distributors to continue selling Fox DVDs to Redbox 30 days after Fox releases new titles on DVD, but not before.

This case, therefore, is not about any refusal to provide Fox DVDs to Redbox. Rather, this case is about Redbox's insistence that Fox (i) sell DVDs to Redbox through distributors; (ii) on the date that Redbox demands the DVDs; and (iii) at the price that Redbox wants to pay. Unable to get the terms it wanted at the bargaining table, Redbox filed suit claiming violations of Section 1 of the Sherman Act, 15 U.S.C. § 1 (along with claims of copyright violations and tortious interference), apparently hoping to pressure Fox into selling DVDs to Redbox on Redbox's terms.

Antitrust law does not require a seller to provide its product through the distribution channel that the buyer demands, on the date that the buyer demands, or at the price that the buyer demands. To the contrary, sellers have considerable freedom under the law to sell (or not sell) to whomever they want, how they want, and when they want. To this end, a seller's distribution policies do not violate Section 1 of the Sherman Act unless the plaintiff pleads and proves (i) a contract, combination, or conspiracy; that (ii) injures competition; (iii) in a plausible antitrust market. Redbox cannot meet any of these elements, let alone all of them, as it must to state a Section 1 claim.

2

*First*, Redbox does not plead facts demonstrating a contract, combination, or conspiracy between Fox and anyone else.[3] Although the Amended Complaint advances two theories — an agreement between Fox and its distributors, and an agreement between Fox and retailers (such as Best Buy, Wal-Mart and Target) — neither satisfies applicable pleading requirements. As to distributors VPD and Ingram, Fox's distribution policy was *unilateral*, not the result of any *agreement* between Fox and either VPD or Ingram. In its original complaint, Redbox alleged that Fox "instructed" and "ordered" its distributors to provide Fox DVDs to Redbox only 30 days after the release date and that "[f]aced with the prospect of being denied access to new release Fox DVDs, VPD and Ingram have had no choice but to acquiesce to Fox's demands . . . ." (Compl. (D.I. 1) ¶¶ 3, 33, 38.) Fox's unilateral instruction to distributors does not constitute a "contract, combination or conspiracy" — an essential element of a Section 1 claim — which is why Fox argued in its original Rule 12(b)(6) motion that the Section 1 claims should be dismissed as a matter of law. Realizing the problem, Redbox simply deletes these allegations from its Amended Complaint and now states that the distributors "agreed to Fox's request . . . ." (Am. Compl. ¶ 3.)

Redbox's conclusory allegation of an agreement is unavailing. The U.S. Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), makes clear that an antitrust plaintiff cannot proceed with a Section 1 claim absent *factual allegations* making the assertion of an agreement plausible. *Id.* at 570. Inserting antitrust buzzwords and deleting prior

---

[3]  Redbox has filed a separate lawsuit against Universal Studios that is pending before this Court. *See Redbox Automated Retail LLC v. Universal City Studios LLP, et al.*, Civ. No. 08-766. The Court granted in part and denied in part Universal's motion to dismiss Redbox's first amended complaint. (D.I. 47.) Universal did not argue the absence of a Section 1 agreement with distributors. *See* Discussion *infra* Section I.A.1. Thus, the Court did not consider this argument in denying Universal's motion.

allegations cannot save the Section 1 claim. Redbox does not allege that VPD or Ingram participated in formulating or negotiating Fox's distribution policy, or that VPD or Ingram engaged in concerted action of any kind with Fox. The factual allegations in the Amended Complaint demonstrate nothing more than compliance with Fox's unilateral policy.

Redbox's Amended Complaint also adds another conclusory allegation that Fox "agreed" with retailers Wal-Mart, Best Buy and Target to boycott Redbox. (Am. Compl. ¶ 36.) But Redbox again offers no factual allegations supporting that conclusion. Absent plausible factual allegations demonstrating the key element of agreement, Redbox's Section 1 claims fail. (*See* Part I.A, *infra*.)

*Second*, Redbox does not, and cannot, plead that Fox's distribution policy injures market-wide *competition*. (*See* Part I.B, *infra*.) To state a Section 1 claim based on a seller's distribution policy, courts typically require factual allegations demonstrating injury to market-wide competition among all brands (referred to as "inter-brand" competition). Here, Redbox does not allege that Fox's distribution policy injures inter-brand competition (i.e. rentals of DVDs produced by other studios). In fact, Redbox does not allege that Fox's distribution policy injures the ability of consumers to rent or purchase DVDs produced by other studios at all. Absent injury to inter-brand competition, Redbox's claim under Section 1 should be dismissed.

Redbox asserts only that *Redbox's* rentals of *Fox DVDs* are injured. But the law gives a seller (like Fox) substantial freedom to *restrict* distribution of its *own brand* in order to strengthen the brand and thereby *improve* competition with other brands. Accordingly, the Supreme Court and many lower courts have stated that alleged injury to *one competitor* (here, Redbox) or to *one brand* (here, Fox DVDs) does not demonstrate the injury to *market-wide competition* required for an antitrust claim. As a result, exclusive distribution territories,

4

distribution channel restrictions, and customer restrictions are commonplace across many industries.

Even Redbox's allegations of injury to competition for *Fox*-brand DVD rentals (*i.e.*, *intra-brand* competition) fail. Although Redbox alleges that consumers cannot rent Fox DVDs from *Redbox* within 30 days of their release, Redbox does not (and cannot) allege that consumers are unable to obtain Fox DVDs from *other suppliers* or that *price-competition* among those suppliers has somehow stopped. Put differently, Redbox does not allege that consumers have been *foreclosed* from obtaining Fox DVDs from other sources or that competition for renting or selling Fox DVDs has ceased. Thus, even Redbox's conclusory assertions of injury to *intra-brand* competition (aside from being insufficient to maintain a Section 1 claim as a matter of law) are not plausible given the alternate sources of Fox-brand DVDs in the marketplace.

*Third*, Redbox's antitrust claim fails as a matter of law because Redbox has failed to allege a plausible antitrust market. Because it cannot plead that Fox has injured inter-brand competition, Redbox tries to circumvent that requirement by pretending that *every single new-release Fox DVD title* comprises its own individual market without competition from any other DVD title. But asserting that a DVD title never faces competition from any other DVD title defies common sense. Because individual products are rarely so unique as to have *no substitutes at all*, courts routinely grant motions to dismiss antitrust claims premised (like this one) on allegations of "single product" markets. (*See* Part I.C, *infra*.)

Redbox's antitrust claims under Section 1 of the Sherman Act, therefore, should be dismissed. The Court also should dismiss Redbox's remaining counts: (a) Redbox's claim for "copyright misuse" is doomed by the well-settled law holding that copyright misuse is an affirmative defense to a claim of copyright infringement, not a cause of action (*see* Part II, *infra*);

5

(b) Redbox's claim for tortious interference with contract fails because Redbox's contracts with Fox's distributors excuse performance when the distributors cannot obtain timely delivery of DVD product from studios (*see* Part III, *infra*); and (c) Redbox's claims for tortious interference with prospective business opportunity and unfair competition do not plead a prospective business opportunity at all (on the contrary, Redbox cannot reasonably expect a retailer like Target to have individual stores distribute hundreds of copies of Fox DVDs to Redbox instead of using inventory to make sales to traditional retail customers — who may purchase other items while in the store) (*see* Part IV, *infra*).

Redbox has already amended its complaint in response to Fox's arguments, so its Amended Complaint presumably reflects its best effort. For the reasons outlined above, and discussed more fully below, the Court should grant Fox's motion to dismiss with prejudice.

## SUMMARY OF THE ARGUMENT

1.      Redbox's antitrust claims under Section 1 of the Sherman Act can and should be dismissed for any of the following four reasons:

(a)  Redbox does not identify any unlawful agreement between Fox and its distributors or Fox and DVD retailers;

(b)  Redbox does not allege harm to inter-brand competition;

(c)  Redbox's allegations of harm to intra-brand competition are inadequate to demonstrate market-wide injury to competition; and

(d)  Redbox does not allege a plausible antitrust market.

2.      Redbox's copyright misuse claim should be dismissed because copyright misuse is an affirmative defense to copyright infringement, not a cause of action.

3.      Redbox's tortious interference with contract claim fails because Fox is not alleged to have interfered with any contract *requiring* distribution of Fox DVDs to Redbox.

6

4. Redbox's tortious interference with prospective business opportunity and unfair competition claims fail because:

(a) Redbox has no reasonable expectation that Wal-Mart, Best Buy or Target wish to transform themselves from national retailers into Redbox's DVD distributor;

(b) Redbox does not plead any facts supporting an unlawful agreement between Fox and retailers, or any other allegation demonstrating intentional interference or unfair competition; and

(c) Fox's alleged conduct does not violate antitrust laws, and Redbox offers no independent reason as to why Fox's conduct is wrongful under tort or unfair competition law.

## STATEMENT OF THE ALLEGATIONS

As alleged in Redbox's Amended Complaint,[4] Fox and its affiliates are "engaged in the business of developing, producing, and distributing to others copyrighted motion pictures and other video entertainment in the United States and throughout the world." (Am. Compl. ¶ 7.) "Some of Fox's more popular movie franchises include the *Star Wars*, *Ice Age*, *X-Men*, *Die Hard*, *Alien*, and *Predator* series." (*Id.*)

Redbox rents and sells DVDs to consumers at over 17,000 self-service kiosks located at retail outlets including fast-food restaurants, Wal-Mart, grocery stores and convenience stores. (*Id.* ¶¶ 15, 16, 18, 20.) Each of these kiosks holds "up to 700 DVDs comprising 70 to 200 individual titles." (*Id.* ¶ 15.)

Fox — like any other seller — decides how best to price and distribute its product. In certain instances, Fox provides DVDs directly to large retailers for sale or rental to consumers.

---

[4] Although Fox disputes many of the allegations in the Amended Complaint, for purposes of this motion only, Fox recites allegations from the Amended Complaint as if they are true.

In other instances, Fox provides its DVDs through wholesale distributors, such as Video Product

Distributors, Inc. ("VPD") and Ingram Entertainment Inc. ("Ingram"). (Am. Compl. ¶ 8.)

Redbox has acquired new-release Fox DVDs through VPD and Ingram. (*Id.* ¶ 29.)

Redbox has a supply contract with Ingram and represents that its agreement with VPD is

similar. (*Id.* ¶¶ 29-30, Ex. A.) Redbox's supply contracts do not impose an unconditional

obligation on the distributor to fill Redbox's orders for new-release Fox DVDs. (*See id.*, Ex. A.)

For example, Redbox's agreement with Ingram specifies that Ingram's "delivery to Redbox is

conditioned on 'Ingram Entertainment's suppliers mak[ing] timely delivery to Ingram.'" (*See*

*Redbox Automated Retail LLC v. Universal City Studios LLP, et al.*, Civ. No. 08-766, Opinion,

dated 8/17/09, D.I. 46 ("Universal Op.") at 11.)

Considering Redbox's growth and business model, Fox decided in 2009 to change its

distribution method to Redbox. Therefore, Fox offered to directly provide DVDs to Redbox on

the DVD's "street date" (the term used to refer to the DVD's release date) (Am. Compl. ¶¶ 34,

38; Ex. C), just as Fox does with other large rental retailers such as Blockbuster and Netflix. Fox

and Redbox negotiated the proposal but ultimately did not agree on price. (*Id.*) Rather than stop

selling DVDs to Redbox altogether, Fox announced a policy allowing its distributors to continue

providing DVDs to kiosk operators like Redbox 30 days after the DVD's street date, but not

before. (*Id.* ¶ 34.)

Days after the breakdown of negotiations between Fox and Redbox, Redbox sued.

Redbox's lawsuit asks this Court to hold Fox liable under the antitrust laws, copyright law, and

in tort for not selling DVDs to Redbox on the date that *Redbox* wants, at the price that *Redbox*

demands.

8

Redbox does not allege that Fox's distribution policy will affect the rental of any other
brand DVD — through Redbox or the many other DVD rental companies. Redbox also does not
allege that Fox DVDs are not readily available to consumers for rental or purchase at other
outlets. Rather, Redbox alleges that Fox's distribution policy will prevent the rental of new-
release Fox DVDs from Redbox.

## ARGUMENT

As the Third Circuit noted in August, "pleading standards have seemingly shifted from
simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more
than the possibility of relief to survive a motion to dismiss." *Fowler v. UPMC Shadyside*, 578
F.3d 203, 210-11 (3d Cir. 2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft
v. Iqbal*, 129 S. Ct. 1937, 1955 (2009)).[5]  Under this new regime, the test is no longer (as it was
under *Conley v. Gibson*, 355 U.S. 41, 45 (1957)) whether "no set of facts" exists entitling the
plaintiff to relief.  As the Third Circuit explained, while the *Twombly* court "retired" the "no set
of facts" standard, *Iqbal* buried it once and for all. *See Fowler*, 578 F.3d at 210 ("*Iqbal*
additionally provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to
federal complaints before *Twombly*.") (citation omitted); *see also U.S. ex rel. Lobel v. Express
Scripts, Inc.*, No. 09-0147, 2009 WL 3748805, at *1 (3d Cir. Nov. 10, 2009) (describing
*Twombly* and *Iqbal* as having established a "more exacting standard" for analyzing complaints).
Now, a complaint must "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at
1949 (citation omitted).

---

[5]     The Third Circuit's decision in *Fowler* discussing pleading standards was issued the day after
this Court issued its order on Universal's motion to dismiss.

Under *Iqbal*, a district court considering a complaint's sufficiency must conduct a "two-part analysis." *Fowler*, 578 F.3d at 210. First, the court must separate out the factual and legal elements of a claim. *Id.* Though the court must accept *well-pled* factual allegations, it may disregard bare legal conclusions. *Id.* (citing *Iqbal*, 129 S. Ct. at 1949); *see also Iqbal*, 129 S. Ct. at 1950 ("conclusions [] are not entitled to the assumption of truth"). Second, the court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 210-11 (citing *Iqbal*, 129 S. Ct. at 1950); *see also W. Penn Allegheny Health Sys., Inc. v. UPMC*, No. 09cv0480, 2009 WL 3601600, at *16 (W.D. Pa. Oct. 29, 2009) (dismissing plaintiff's Sherman Act claims under the *Twombly/Iqbal* standard); *Warfield Philadelphia, L.P. v. Nat'l Passenger R.R. Corp.*, No. 09-1002, 2009 WL 4043112, at *3 (E.D. Pa. Nov. 20, 2009) (same). This "plausibility" determination is a "context-specific task" requiring the court to "draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950 (citation omitted).

The Supreme Court has emphasized that enforcing these more rigorous pleading requirements is especially important in antitrust cases. Otherwise, "a plaintiff with a 'largely groundless claim' [could] be allowed to 'take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of settlement value.'" *Twombly*, 550 U.S. at 558 (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). The Supreme Court explicitly rejected the argument that insubstantial or flawed complaints could be weeded out later, for example at the summary judgment stage. *Twombly*, 550 U.S. at 559 ("And it is self-evident that the problem of discovery abuse cannot be solved by careful scrutiny of evidence at the summary judgment stage . . . .") (internal quotations omitted). In the Supreme Court's view, this type of relief is too late because it comes only after "enormous expense" and causes a real

10

risk that "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases" before the summary judgment stage is ever reached. *Id.* (citations omitted). Because Redbox fails to plead plausible antitrust, copyright or tort claims, the Amended Complaint should be dismissed.

## I.     Redbox Fails to State a Claim Under Section 1 of the Sherman Act.

### A.     Redbox Has Not Pled a "Contract, Combination . . . or Conspiracy" Under Section 1.

As a threshold matter, Redbox's antitrust claims should be dismissed because Redbox fails to identify a "*contract, combination . . . or conspiracy*" that allegedly injured competition, as is required for an antitrust claim. *See* 15 U.S.C. § 1 (emphasis added); *see also Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 999 (3d Cir. 1994) (noting that the "very essence" of a Section 1 claim is "the existence of an agreement"). It is black-letter law that "[i]ndependent action is not proscribed [under Section 1 of the Sherman Act]. A manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984) (citations omitted). Thus, Section 1 of the Sherman Act does not apply to *unilateral* conduct at all: "[u]nilateral activity by a defendant, no matter the motivation, cannot give rise to a Section 1 violation." *Stark v. Ear Nose & Throat Specialists of Northwestern Penn.*, 185 Fed. Appx. 120, 124 (3d Cir. 2006) (citing *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 465 (3d Cir. 1998)); *Cosmetic Gallery, Inc. v. Schoeneman Corp.*, 495 F.3d 46, 55 (3d Cir. 2007) (same).[6]

---

[6]     *See also Fisher v. City of Berkeley, California*, 475 U.S. 260, 266 (1986) ("[I]t [is] of considerable importance that independent activity by a single entity be distinguished from a concerted effort by more than one entity to fix prices or otherwise restrain trade. Even when a single firm's restraints directly affect prices and have the same economic effect as concerted action might have, there can be no liability under § 1 in the absence of

To state a Section 1 claim, a plaintiff must plead that two independent actors contracted, combined, or conspired to engage in conduct that injured competition. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984) ("[U]nity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement" must exist to trigger Section 1 liability.) (citation omitted). The critical element of agreement cannot be alleged by merely inserting the word "agreement" into the complaint. Indeed, the Supreme Court in *Twombly* held that "stating such a claim [pursuant to Section 1 of the Sherman Act] requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556.

Here, Redbox's Amended Complaint alleges that Fox entered into agreements with two different groups of companies to "boycott" Redbox: (i) distributors VPD and Ingram and; (ii) retailers Wal-Mart, Target, and Best Buy. Redbox, however, does not meet current pleading standards for alleging an agreement to "boycott" Redbox between either Fox and the distributors or Fox and any retailers.

## 1.    Redbox Does Not Plead Any Facts Demonstrating An Agreement Between Fox and Either VPD or Ingram To Refuse Sales To Redbox.

Ninety years ago, the Supreme Court in *United States v. Colgate & Co.*, 250 U.S. 300 (1919), declared that unilateral conduct cannot, as a matter of law, violate Section 1: "[T]he [Sherman] [A]ct does not restrict the long recognized right of trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal; and, of course, he may announce in advance the circumstances under which he will refuse to sell." *Colgate*, 250 U.S. at 307. Thus, under *Colgate*, a manufacturer may

---

agreement.") (internal citations and quotations omitted).

unilaterally announce a distribution policy, and a distributor may follow it, without forming a Section 1 conspiracy. *See Monsanto*, 465 U.S. at 761 ("Under [*Colgate*], the manufacturer can announce its resale prices in advance and refuse to deal with those who fail to comply. And a distributor is free to acquiesce in the manufacturer's demand in order to avoid termination."); *Int'l Logistics Group, Ltd. v. Chrysler Corp.*, 884 F.2d 904, 907 (6th Cir. 1989) ("Current legal precedent supports the conclusion that a conspiracy may not evolve under circumstances where a dealer or distributor involuntarily complies to avoid termination of his product source.").[7]

Indeed, a Section 1 claim should be dismissed at the pleading stage where the plaintiff cannot allege anything more than a distributor's acquiescence in a supplier's unilateral distribution policy. *See, e.g., Re/Max Int'l, Inc. v. Smythe, Cramer Co.*, 265 F. Supp. 2d 882, 899 (N.D. Ohio 2003) (granting motion to dismiss challenge to policy offering lower commissions to real estate brokers employing former agents of competing brokerage where policy was unilaterally imposed); *Jala v. W. Auto Supply Co.*, Civ. No. 95-100-P-H, 1995 WL 463683, at *2 (D. Me. July 26, 1995) (granting motion to dismiss complaint alleging Section 1 conspiracy based on plaintiff's acquiescence in defendant's pricing demands).

Here, Redbox pleads nothing more than VPD's and Ingram's compliance with Fox's unilaterally formulated distribution policy. Redbox's original Complaint alleged that Fox "instructed" VPD and Ingram to sell Fox DVDs to Redbox 30 days after street date. (Compl.

---

[7] *See also Toscano v. Prof'l Golfers Ass'n*, 258 F.3d 978, 984 (9th Cir. 2001) ("acceptance of . . . part of the [contract] package provides no evidence of concerted action to restrain trade . . . the PGA Tour independently set the terms of the contracts, and the local sponsors merely accepted them"); *Am. Airlines v. Christensen*, 967 F.2d 410, 413-14 (10th Cir. 1992) ("No evidence in the record suggests that American did not independently set the terms under which it would offer its travel awards, and the mere fact that its members accepted those terms does not generate the kind of concerted action needed to violate Section 1.") (citing *Monsanto*, 465 U.S. at 761).

13

¶ 3.) Redbox alleged that "Fox has *ordered* all of its distributors to stop selling to Redbox . . . ." (Compl. ¶ 33 (emphasis added).) Redbox alleged that "[f]aced with the prospect of being denied access to new release Fox DVDs, VPD and Ingram have had no choice but to acquiesce to Fox's demands . . . ." (*Id.* ¶ 38.) And Redbox's original Complaint alleged that "VPD and Ingram will, by necessity, bow to Fox's coercion and stop filling Redbox's orders for Fox DVDs with release dates beginning October 27, 2009."[8] *Id.* at ¶ 33.

The Amended Complaint continues to allege that "Fox has the power to unlawfully coerce VPD and Ingram to not sell new-release DVDs to Redbox[]" and that "VPD and Ingram have acquiesced to Fox's demands . . . ." (Am. Compl. ¶ 40.) Redbox alleges that, on August 5, 2009, Fox told Redbox that it "was demanding that its wholesalers, including VPD and Ingram, cease selling any new-release Fox DVD to Redbox for at least 30 days after its street date." (Am. Compl. ¶ 34.)

In an effort to fulfill the requirement of pleading the element of a "contract, combination or conspiracy," Redbox now makes the bare-bones allegation that VPD and Ingram "agreed" to not provide Fox DVDs to Redbox until 30 days after street date. (*See* Am. Compl. ¶¶ 33, 35.) But Redbox cannot avoid dismissal by making a conclusory allegation labeling Fox's unilateral distribution policy an "agreement." The Supreme Court in *Twombly* emphasized that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

---

[8]   Redbox's Amended Complaint tries to abandon these allegations by deleting them, but Redbox cannot run away from its original Complaint submitted in accordance with Rule 11 so easily. The Court should reject Redbox's attempt to play "fast and loose" in its pleading and assert claims inconsistent with the factual allegations in its original Complaint. *See, e.g., Karnuth v. Rodale, Inc.*, No. 03-742, 2005 WL 747251, at *4 (E.D. Pa. Mar. 30, 2005) (noting courts' concern with "flip-flopping" of allegations in sworn documents, including complaints (citation omitted)).

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 550 (citation and internal quotation marks omitted). *See also Burtch v. Milberg Factors, Inc.*, No. 07-556, 2009 WL 840589, at *13 (D. Del. Mar. 30, 2009) (declining to infer that a Section 1 agreement existed "[b]ecause the Complaint offers only vague allegations of unspecified agreements"). Yet that is exactly what Redbox attempts to do here: use labels and conclusions of "agreement" to overcome the lack of any supporting factual allegations, contrary to the factual allegations it asserts in both its original and amended complaints. Redbox alleges no facts demonstrating that VPD or Ingram collaborated with Fox to formulate its distribution policy. What Redbox labels "agreement" is no more than VPD and Ingram's acquiescence in Fox's unilateral policy decision; something that courts repeatedly have found insufficient to state a Section 1 claim, as discussed above. *See, e.g., Int'l Logistics Group, Ltd.*, 884 F.2d at 907.

Redbox undoubtedly will argue that this Court should deny Fox's motion to dismiss because the Court previously denied Universal's Rule 12(b)(6) motion to dismiss the Section 1 claims brought in that matter. (*See* D.I. 47 in Case No. 08-766.) But the allegations against Universal differ. Indeed, Universal did not argue the absence of a Section 1 agreement with distributors as a basis for its motion. Thus, the Court had no occasion to consider this issue on Universal's motion. Moreover, the Court did not consider Universal's motion in light of the new pleading standards announced in *Iqbal* and *Fowler*.

Because Redbox's allegations are insufficient to allege a "contract, combination or conspiracy" with distributors under the *Iqbal* standard, they are legally insufficient and should be dismissed.

2.      **Redbox Does Not Plead Facts Demonstrating An Agreement Between Fox and Any Retailer To Refuse Sales To Redbox.**

Although Redbox also suggests that Fox has entered into an agreement with DVD retailers Wal-Mart, Best Buy and Target to limit sales to Redbox (Am. Compl. ¶ 36), Redbox cannot quite bring itself to actually allege or otherwise identify such an agreement. Rather, Redbox alleges that "[o]n information and belief, Fox continues to *seek agreement with, and cooperation from*, major wholesalers and retailers to prevent sales of new-release DVDs to Redbox." (*Id.* (emphasis added); *see also id.* (alleging that "[d]iscovery will show that Fox representatives contacted . . . retailers of DVDs, *seeking confirmation that they would agree* not to sell new-release DVDs to Redbox . . . ." (emphasis added).) Even as to these purported attempts to "seek agreement," Redbox offers no factual allegations to support its claims. *See Fowler*, 578 F.3d at 210 ("To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible.").

In any event, the key point here is that a Section 1 claim must be based on an *actual agreement*, not on alleged efforts to "seek agreement." (*See* Am. Compl. ¶¶ 36.) Thus, Redbox's allegation that Fox is "seek[ing] agreement" with retailers is insufficient. *See Olde Monmouth Stock Transfer Co., Inc. v. Depository Trust & Clearing Corp.*, 485 F. Supp. 2d 387, 396-97 (S.D.N.Y. 2007) ("Section 1 does not address 'attempt' claims . . . Absent an actual agreement, plaintiff's Section 1 claim must fail.").

Unable to plead any facts demonstrating a Section 1 agreement between Fox and retailers, Redbox alleges that Wal-Mart, Best Buy, and Target have stated that they will not sell more than three DVDs to a customer and posits that there must be an agreement because "each retailer has an incentive to sell as many DVDs as possible to any purchaser who walked into a store and wanted to buy DVDs." (Am. Compl. ¶ 36; *id.* ("[i]t makes no economic sense for any

16

retailer to deny sales unless it knows that other retailers have also agreed not to meet Redbox's demand").) But a retailer's restriction on quantities sold to individual customers is not unusual at all. Common sense and experience teaches that retailers often limit purchases of new and highly demanded products, especially when those products are sold as "loss leaders" or are otherwise used to entice customers into the store to make other purchases. Thus, if a Redbox representative goes to Target and purchases all of the store's copies of *Ice Age 3*, ordinary retail customers who go to Target looking for that title will leave disappointed and may leave without making other purchases. Redbox's attempt to infer an agreement between Fox and retailers based on retail quantity restrictions falls far short of the factual allegations needed to plead a Section 1 agreement.[9]

## B.   Redbox Cannot Plead an Unlawful "Restraint of Trade."

Even if Redbox could plead a Section 1 agreement (it cannot), the Court should dismiss the Section 1 claim because Redbox has failed to plead that Fox's distribution policy is an unlawful "restraint of trade." 15 U.S.C. § 1.

The law gives sellers freedom to decide what products to sell, to whom, when, where, and what price to charge. A seller may "freely . . . exercise his own independent discretion as to parties with whom he will deal" without violating the antitrust laws. *Colgate*, 250 U.S. at 307; *see also Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 129 S. Ct. 1109, 1123 (2009) (noting that sellers have freedom to price their own products and to refuse to deal with buyers). To the extent that market economics permit, therefore, a seller can raise its price, reduce its output, or delay or

---

[9] Because Redbox fails to meet the threshold requirement of pleading a contract, combination or conspiracy, the Court may dismiss the Section 1 claims without even having to reach the other grounds for this motion, discussed below.

otherwise limit distribution of its own products without running afoul of the antitrust laws. The seller's decisions are checked by basic economics. If the seller raises its price too high, brings its product to market at the wrong time, erroneously refuses to sell to a particular customer, or decides on the wrong distribution method, the market will make the seller pay for bad business decisions, just as the market will reward good ones.

As a natural extension of the seller's freedom to decide how to sell its products, the law also gives a seller substantial freedom to establish restrictions on whether and how its distributors can sell its products. Thus, more than 30 years ago, the U.S. Supreme Court declared that an agreement between a seller and a distributor does not violate the antitrust laws unless it is shown to injure *market-wide competition* under the "rule of reason." *Cont'l T.V. Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 54 (1977); *see also Gordon v. Lewistown Hosp.*, 423 F.3d 184, 210 (3d Cir. 2005) (noting that Third Circuit has held agreements between manufacturers and distributors are "reviewed under the traditional rule of reason" (citing *Orson Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1368 (3d Cir. 1996)). In rule of reason cases, a failure to plead facts demonstrating injury to *competition* in a plausible antitrust market warrants dismissing the case on a Rule 12(b)(6) motion. *See, e.g., IDT Corp. v. Bldg. Owners & Managers Ass'n Int'l*, No. 03-4113, 2005 WL 3447615, at *10 (D.N.J. Dec. 15, 2005) (dismissing complaint in part because plaintiff "has failed to allege sufficient facts concerning the anticompetitive effects of [d]efendants' conduct in the relevant product and geographic markets").

The rule of reason permits a seller to impose non-price restraints on its distributors unless doing so can be shown to injure market-wide competition in a properly defined market. *See Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961) (requiring that allegedly anticompetitive restraint foreclose a substantial share in the relevant supply market); *E. Food*

18

*Servs., Inc. v. Pontificial Catholic Univ. Servs. Ass'n, Inc.*, 357 F.3d 1, 9 (1st Cir. 2004)

(dismissing complaint in part because "[t]here is no indication that [the plaintiff] has any hope of

showing substantial foreclosure in a properly defined market"); *R.J. Reynolds Tobacco Co. v.*

*Philip Morris, Inc.*, 199 F. Supp. 2d 362, 387 (M.D.N.C. 2002) (noting that "courts generally

require plaintiffs to show substantial foreclosure in vertical restraint cases involving Rule of

Reason analysis") (collecting cases).[10]

Consistent with the rule of reason, a seller may restrict the sales of its own brand. *See,*

*e.g., Orson*, 79 F.3d at 1372. For example, a seller might decide to assign territories to

distributors or create distribution "channels" so that distributors can sell only to certain kinds of

customers, but not others. Because the seller is presumed to know best how to promote and

strengthen its own brand, courts uphold such limits on competition within a brand (called "intra-

brand" competition) on the theory that strong brands improve *overall competition among brands*

(called "inter-brand" competition). Put differently, courts are willing to sacrifice "intra-brand"

competition (i.e. competition between distributors of one brand) because strengthening

individual brands generally will benefit "inter-brand" competition. *See, e.g., Cont'l T.V., Inc.*,

433 U.S. at 52 n.19, 54, 56 (noting that *inter-brand* competition is "the primary concern of

---

[10] Redbox's Amended Complaint purports to assert four antitrust claims under Section 1 of the Sherman Act, 15 U.S.C. § 1: (i) a Section 1 claim under the "quick look doctrine" (Count II); (ii) an antitrust claim for "misuse of copyright" (Count III); (iii) a claim labeled "unreasonable restraint of trade" (Count IV); and (iv) a Section 1 claim labeled "unlawful boycott" (Count V). Each of these "claims," however, is based on the same allegation: that Fox's alleged distribution policy to sell DVDs to Redbox 30 days after they are released, but not before, violates Section 1 of the Sherman Act. Thus, Redbox does not have four separate antitrust claims. (*See* Universal Op., at 7 (analyzing the four alleged antitrust claims as one claim).) The issue in this case, therefore, is whether Redbox has stated a claim for a vertical non-price restraint under the rule of reason in violation of Section 1 of the Sherman Act. It has not.

antitrust law" and stating that courts are far less concerned about policing *intra-brand* competition because "manufacturers have an economic interest in maintaining as much intrabrand competition as is consistent with the efficient distribution of their products"). As a result, "[t]he unilateral decision of a single manufacturer to rearrange its distribution structure by limiting or increasing the number of its dealers or transferring its business to different dealers does not violate the Sherman Act." *Seaboard Supply Co. v. Congoleum Corp.*, 770 F.2d 367, 374 (3rd Cir. 1985) (citation omitted).[11]

Applying these principles to this case, Redbox cannot plead an unlawful restraint of trade because (i) Redbox has not alleged, and cannot allege, that Fox's distribution policy injures *inter-brand competition* for DVD rentals market-wide; and (ii) in any event, Redbox cannot even allege that intra-brand competition for rentals of Fox DVDs has been restricted.

## 1. Redbox Has Not, And Cannot, Plead That Fox's Distribution Policy Harms *Inter-brand* Competition for DVD Rentals.

"To prevail on a section 1 claim, a plaintiff must . . . show more than just an adverse effect on competition among different sellers of the same product ('intrabrand' competition)." *K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 127 (2d Cir. 1995); *see also Electronics Commc'ns Corp. v. Toshiba Am. Consumer Prods.*, 129 F.3d 240, 245 (2d Cir. 1997)

---

[11]   *See also Tidmore Oil Co., Inc. v. BP Oil Co./Gulf Prods. Div.*, 932 F.2d 1384, 1389 (11th Cir. 1991) (stating that "[i]t is elementary, under the antitrust laws, that a supplier 'has the right to deal, or refuse to deal, with whomever it likes, as long as it does so independently'") (citing, among other cases, *Monsanto Co.*, 465 U.S. at 761); *Nat'l Indep. Theatre Exhibitors, Inc. v. Charter Fin. Group, Inc.*, 747 F.2d 1396, 1402 (11th Cir. 1984) ("Section 1 of the Sherman Act does not proscribe independent action."), *cert. denied, Patterson v. Charter Fin. Group, Inc.*, 471 U.S. 1056 (1985); *see also Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1573 (11th Cir. 1991) ("It is a harsh reality that when competition occurs, some win and some lose. Emerging victorious from competition, however, is not illegal under the Sherman Act. To hold otherwise would require us to interpret the Sherman Act as mandating cooperation among rivals.") (footnote reference omitted).

(citation omitted). According to a leading antitrust treatise: "[I]njury to competition can be expected only if [a competitor] is denied access to a *market*, but not if it is denied access to only one particular buyer or seller within the market." 11 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1802b (emphasis in the original).

Redbox asserts that there is a market for "new-release DVDs." (*See, e.g.,* Am. Compl. ¶ 23.)[12] But Redbox does not, and cannot, allege that Fox is the *only* supplier or only brand of new-release DVDs. Studios such as Paramount, Disney, Sony, Warner Bros., Universal, Lionsgate and others create and distribute their own DVDs. (*See, e.g.,* Redbox's Am. Compl. against Universal[13] ¶ 9 (alleging that Universal "is one of the world's leading creators and distributors of motion pictures"); Redbox's Am. Compl against Warner[14] ¶ 1 (alleging that "Warner is the largest distributor of filmed entertainment in the world [and] distributes [DVDs] for home video use).)[15] In fact, Redbox's corporate parent disclosed in SEC filings that Redbox

---

[12]  Redbox does not allege why its proposed market should be limited to "new-release *DVDs*" rather than including other movie distribution channels like pay-per-view or iTunes. (*See* Coinstar Inc. 10-Q dated Nov. 6, 2009 (Ex. A, Horowitz Decl.) (acknowledging that Redbox competes with pay-per-view and internet content providers as well as "noncommercial sources like libraries").) Nor, for that matter, does Redbox allege why other forms of entertainment should not be included within its proposed market. Indeed, Redbox's own securities filings admit that Redbox faces "general competition from other forms of entertainment such as movie theaters, television, sporting events and video gaming." (*Id.*) In any event, none of the discussions of hypothetical "markets" in this brief should be taken as concessions that antitrust law would permit markets to be defined as narrowly as, for example, DVD rentals alone.

[13]  (D.I. 30 in case number 08-766.)

[14]  (D.I. 21 in case number 09-613.)

[15]  Because they are public records, the Court may take judicial notice of and consider the allegations in Redbox's complaints against Universal and Warner Brothers. *See Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (noting that in deciding motions to dismiss under Rule 12(b)(6), courts may consider "the allegations in the complaint, exhibits attached

had recently entered into direct distribution agreements with Sony, Lionsgate and Paramount. (*See* Coinstar Inc. 8-K dated July 21, 2009, Item 8.01 (Sony); Coinstar Inc. 8-K dated Aug. 11, 2009 (Lionsgate); Coinstar Inc. 8-K dated Aug. 25, 2009 (Paramount), attached as Exs. B-D to Horowitz Decl.)[16] According to Redbox, the DVDs licensed and/or purchased from these three studios are expected to represent over 45% of the total DVDs licensed and purchased by Redbox in 2009. (*See id.*) At bottom, Fox is only one of several studios that provide new-release DVDs to consumers.

Against this backdrop of multiple, competing studios providing new-release DVDs to consumers, Redbox attempts to show anticompetitive harm by alleging that Fox has unspecified market power. (*See* Am. Compl. ¶ 27.) As a result, Redbox alleges that "Fox's actions, if not remedied by this Court, will restrict output, eliminate competition in the rental and sales markets and artificially raise prices to consumers." (Am. Compl. ¶ 39.) These allegations are inadequate to sustain a Section 1 claim for three reasons.

*First*, Redbox's allegation that Fox has market power (Am. Compl. ¶ 27) is wholly conclusory. *See, e.g., Iqbal*, 129 S. Ct. at 1950 (without supporting factual allegations, "labels and conclusions" will not move claims "across the line from conceivable to plausible"). Redbox

---

to the complaint, *matters of public record*, and documents that form the basis of a claim") (emphasis added); *see also Waris v. HCR Manor Care*, No. 07-3344, 2008 WL 5352278, at *6 (E.D. Pa. Dec. 17, 2008) (noting that a complaint is a public record, and therefore, the "Defendant did not act improperly by bringing it to th[e] Court's attention").

[16] Like complaints. "[SEC] filings fall within this category of public record." *Rosenberg v. XM Ventures*, 129 F. Supp. 2d 681, 687 n.6 (E.D. Pa. 1988); *see also Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888, 892-93 (D. Del. 1991) (considering SEC filings on a Rule 12(c) motion); *In re NAHC, Inc. Secs.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (affirming district court's decision to take judicial notice of SEC filings). Accordingly, the Court may also take judicial notice of and consider Coinstar's SEC filings by Redbox's corporate parent on this motion.

does not allege Fox's market share, let alone allege that Fox has a dominant market share. Nor does Redbox allege any other *facts* demonstrating that Fox has power in a market, or that with so many competitors, Fox has the power to unilaterally raise *market-wide* prices or to reduce *market-wide* output.

*Second*, Redbox does not allege any actual increase in market prices or decrease in output resulting from Fox's distribution policy. Instead, Redbox makes conclusory allegations about the future. (*See, e.g.,* Am. Compl. ¶ 39 (Fox "*seeks to* restrict output, increase prices" (emphasis added)); *id.* ¶ 41 (Fox "*will* artificially constrain output" (emphasis added)).) But Redbox similarly predicted harm to competition when it sued Universal last year. If Redbox's doomsday predictions were true, it would be able to allege *facts* in its Amended Complaint against Fox demonstrating increased price or reduced output resulting from Universal's distribution policy. Tellingly, it has not. Indeed, despite Universal's policy, Redbox's sales remain exceptionally high. (*See, e.g.,* Am. Compl. ¶ 17 ("[I]n the first half of 2009, Redbox rented an average of 27 million DVDs per month.").)

*Third*, Redbox's assumption that prices will increase or output will decrease fails to account for competition from the many new-release DVDs provided by competing movie studios. Redbox does not allege that Fox's distribution policy forecloses consumers from renting new-release DVDs from Fox's competitors (through Redbox or anyone else). Thus, competition from DVD titles supplied by Fox's competitors (i.e. "inter-brand" competition) *will continue to discipline the price and output of Fox DVDs* regardless of how many Fox DVDs Redbox rents. *See Seagood Trading Corp.*, 924 F.2d at 1572-73 (finding no anticompetitive impact where plaintiffs not foreclosed from every alternative). Put differently, just because Fox does not provide DVDs to Redbox within 30 days of street date does not mean that Fox will be able to

23

indiscriminately raise the price of its DVDs without fear of losing business to competing studios.

Redbox alleges no facts to show that *market-wide, inter-brand competition* will be affected by

Fox's distribution policy.

Given the absence of allegations that Fox's policy will injure *market-wide, inter-brand*

competition for DVDs, Redbox's antitrust claims fail and should be dismissed.[17]

### 2.     Redbox's Allegations Of Injury to Itself and Injury to *Intra-brand* Competition Do Not Satisfy the Requirement of Pleading Harm to Competition.

Unable to allege facts demonstrating injury to inter-brand competition, Redbox instead

alleges that its inability to obtain "new-release Fox DVDs through its normal wholesale

channels" prevents "consumers from renting new-release Fox DVDs from Redbox[.]" (Am.

Compl. ¶¶ 38-40.)  But Redbox's allegations of injury to *itself* or to rentals of a *single brand*

(Fox new-release DVDs) do not withstand scrutiny and, in any event, do not satisfy the

requirement of pleading injury to *market-wide competition*.

Redbox's allegation that Fox's distribution policy will injure Redbox and its customers is

insufficient as a matter of law to sustain a Section 1 claim.  The law draws a significant

distinction between a business practice that injures a particular *competitor*, and a business

practice that injures market-wide *competition. See Brooke Group Ltd. v. Brown & Williamson

Tobacco Corp.*, 509 U.S. 209, 224 (1993) ("It is axiomatic that the antitrust laws were passed for

---

[17]    *See Crane & Shovel Sales Corp v. Bucyrus-Erie Co.*, 854 F.2d 802, 806 (6th Cir. 1988)
(upholding dismissal of Section 1 claim under the rule of reason because complaints did not
allege an "anticompetitive effect at the interbrand level"); *Futurevision Cable Sys. of
Wiggins, Inc. v. Multivision Cable TV Corp.*, 789 F. Supp. 760, 768 (S.D. Miss. 1992) ("It is
clear . . . that a complaint charging restraint of trade based on a supplier's substitution of one
distributor for another must allege anticompetitive effect at the interbrand level of
competition to survive a Rule 12(b)(6) motion for failure to state a violation of section 1 of
the Sherman Act.").

'the protection of *competition*, not *competitors*.'") (citing *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962) (emphasis in the original).[18]

Put differently, alleging injury *to Redbox* does not satisfy the requirement of pleading injury to competition. *See, e.g., Perry v. Rado*, 504 F. Supp. 2d 1043, 1047 (E.D. Wash. 2007) (dismissing the complaint where "[t]he allegations in [the] [c]omplaint [we]re concerned with the impact on [the plaintiff] . . . rather than with injury to competition in general") (footnote reference omitted); *Tigard Elec. v. Nat'l Elec. Contractors Ass'n*, 790 F. Supp. 1498, 1503 (D. Or. 1992) ("Plaintiffs are essentially complaining not that *competition* is being injured, but that they, as *competitors*, are being injured . . .") (emphasis in the original).[19]

In any event, the allegation that Fox's policy injures Redbox and its customers cannot satisfy *Iqbal*'s "plausibility" requirement. *Iqbal*, 129 S. Ct. at 1949. Fox's distribution policy went into effect on October 27, 2009 with the release of *Ice Age 3*. Redbox, however, does not

---

[18] In its order denying Universal's motion to dismiss Redbox's antitrust claims, the Court concluded that Redbox had sufficiently pled that Universal had caused "anticompetitive effects, specifically *Redbox's* inability to compete in the DVD rental and sales markets of *Universal DVDs*." (Universal Op. at 10 (emphasis added).) To the extent that the Court appeared to equate injury *to Redbox* with injury *to competition*, alleged injury to a single retailer (Redbox) of a single brand of DVD rentals is in and of itself insufficient to plead injury to market-wide competition for DVD rentals. *See, e.g., Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 641 (3d Cir. 1996) ("[B]ecause 'antitrust law aims to protect competition, not competitors, [a court] must analyze the antitrust injury question from the viewpoint of the consumer.'") (quoting *Alberta Gas Chems., Ltd., v. E.I. Du Pont De Nemours and Co.*, 826 F.2d 1235, 1241 (3d Cir. 1987)).

[19] *See also George Haug Co. v. Rolls Royce Motor Cars, Inc.*, 148 F.3d 136, 139 (2d Cir. 1998) (affirming, in part, dismissal of complaint that failed to allege "an *actual* adverse effect on competition as a whole in the relevant market: to prove [that plaintiff] has been harmed as an individual competitor will not suffice") (citation omitted) (emphasis in the original); *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 734 (9th Cir. 1987) (granting motion to dismiss and noting that "[i]ndispensable to any section 1 claim is an allegation that *competition* has been injured rather than merely competitors") (citation omitted) (emphasis in the original); *IDT Corp.*, 2005 WL 3447615, at *8.

25

allege that it has been unable to obtain *Ice Age 3* (or any other new-release Fox DVD) from other sources or that *Ice Age 3* and other new-release Fox DVDs are not in Redbox kiosks. To the contrary, Redbox recently reported to its investors that Redbox continues to procure new-release DVDs from other sources.[20]   Moreover, Redbox continues to thrive, even since Universal implemented its policy over a year ago. (First Am. Compl., D.I. 30 in Case No. 08-766, ¶ 4.) Redbox has experienced considerable growth — from 12,000 kiosks nationwide at the end of 2008, to 17,000 kiosks in mid-2009, to currently over 20,000 kiosks. (*See* Am. Compl. ¶¶ 15, 17; *see also* Coinstar 10-Q dated Nov. 6, 2009 (Ex. A, Horowitz Decl.).)  It is hardly plausible to allege that Fox's distribution policy will injure Redbox when Redbox nearly doubled its kiosk footprint since Universal's policy went into effect.

Even if Redbox's conclusory allegation of injury did not contradict judicially noticeable facts, Redbox cannot plead that *consumers* will be injured just because *Redbox* does not offer Fox new-release DVDs.  Redbox admits that it is only one of many companies (including Blockbuster, Netflix, local DVD rental stores, etc.) that compete to rent Fox DVDs.  (Am. Compl. ¶¶ 17, 19, 22; *see also* Coinstar Inc. 10-K dated Feb. 26, 2009 at Item 1.A, attached as Ex. F to Horowitz Decl. (listing competitors).)  Redbox does not allege that these many other rental companies will stop competing to rent Fox titles just because Redbox no longer purchases new-release Fox DVDs through Fox's distributors.[21]  Absent allegations that consumers cannot

---

[20]   *See* Coinstar 8-K dated Dec. 3, 2009, Ex. E, Horowitz Decl. ("Certain Walmart, Best Buy and Target stores have informed field representatives of Redbox that such stores were limiting sales of new-release DVDs to as few as three copies. Although Redbox continues to encounter these types of challenges . . . *many third-party retailer locations, including Walmart, Best Buy and Target locations, have continued to sell new-release DVDs to Redbox without those limitations.*") (emphasis added).

[21]   *See Associated Gen. Contractors v. Cal. State Counsel of Carpenters,* 459 U.S. 519, 526

rent Fox's new-release DVDs from other sources, Redbox cannot sustain a Section 1 claim based on Fox's distribution policy. *See Floors-N-More, Inc. v. Freight Liquidators*, 142 F. Supp. 2d 496, 501-02 (S.D.N.Y. 2001) (plaintiff failed to adequately plead harm to competition based on defendant's refusal to sell where there was no allegation that customers could not procure defendant's products elsewhere); *see also Habitat, Ltd. v. Art of the Muse, Inc.*, No. 07-CV-2883, 2009 WL 803380, at *9 (E.D.N.Y. Mar. 25, 2009) (dismissing complaint because there was no harm to competition "simply because . . . consumers can no longer purchase [the product] from [p]laintiff").

In sum, Redbox's Section 1 claim should be dismissed because (i) Redbox does not plead injury to inter-brand competition; (ii) Redbox does not offer any factual allegation to support its conclusion that market prices will rise, particularly when we know that (a) many studios offer new-release DVDs in competition with Fox, and (b) many companies rent DVDs in competition with Redbox; and (iii) Redbox's assertions of injury to itself do not satisfy the element of injury to competition as a matter of law.

## C.     Redbox Asserts An Implausible Market Definition.

There is a third independent reason why Redbox's Section 1 claim should be dismissed: Redbox has failed to allege a product market satisfying applicable legal standards.

As discussed at Part I.B above, Redbox cannot allege that Fox's distribution policy injures *market-wide, inter-brand competition* in a supposed market for *all* new-release DVDs. Recognizing this, Redbox attempts to re-draw the market, alleging that *every single new-release DVD comprises its own relevant market* or "sub-market." (Am. Compl. ¶ 23.) In other words,

_____

(1983) ("It is not, however, proper to assume that [the plaintiff] can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged.").

27

according to Redbox's pleading, a customer interested in renting one DVD would never substitute another DVD. By alleging markets consisting of a single product where no two DVDs ever compete, Redbox apparently hopes to equate injury to *Redbox's rentals of Fox DVDs* with injury to competition *market-wide*.

Redbox's attempt to gerrymander its market definition to avoid dismissal for failure to allege injury to inter-brand competition does not work because its market definition is not viable. "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436-37 (3d Cir. 1997) (citing cases). Redbox's reference to single new-release DVD product markets defies legal precedent and common sense.

*First*, Redbox's allegation that DVDs have no economic substitutes, or are "price inelastic," because they are copyrighted is conclusory and unsupported in the law. (*See* Am. Compl. ¶ 23 ("The demand for new-release DVDs is price inelastic due to the monopoly power arising from Fox's government-granted copyright.")). Courts (including the Supreme Court) have rejected the idea that exclusive intellectual property rights mean that a product necessarily comprises its own antitrust market.[22] This is because a product can be unique enough for

---

[22] *See, e.g., United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 392 (1956) (trademarked products do not themselves constitute product markets); *E-Z Bowz, LLC v. Prof'l Prod. Research Co.*, No. 00 8670, 2003 WL 22068573. at \*27 (S.D.N.Y. Sept. 5, 2003) (reasoning that "it is obvious that merely obtaining a patent for a product does not create a product market for antitrust purposes") (citation omitted); *Curell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 265-66 (S.D.N.Y. 2000) (dismissing Section 1 antitrust claim

28

intellectual property protection but still have numerous economic substitutes. In fact, the Supreme Court recently rejected the proposition that a patent necessarily confers market power.[23] Thus, that Fox DVDs are copyrighted intellectual property does not establish that each is its own economic market or that Fox has market power.

*Second*, with certain extreme exceptions not applicable here,[24] courts have consistently rejected "single product" markets at the pleading stage, including in the context of copyrighted entertainment. *Theatre Party Assocs., Inc. v. Shubert Org., Inc.*, 695 F. Supp. 150, 154-55 (S.D.N.Y. 1988) is instructive. There, plaintiff proposed a market consisting of advance sales tickets to *Phantom of the Opera. Id.* at 154. On defendant's motion to dismiss, the court rejected plaintiff's proposed market definition, finding that plaintiffs had failed to provide a rational explanation as to "why other forms of entertainment, namely other Broadway shows, the opera, ballet or even sporting events are not adequate substitute products." *Id.* at 154-155; *see also Shaw v. Rolex Watch, U.S.A., Inc.*, 673 F. Supp. 674, 679 (S.D.N.Y. 1987) ("This Court

---

because proposed market for licensing of copyrighted makeup designs and other intellectual property relating to *Cats* Broadway show was implausibly narrow).

[23] *See Illinois Tool Works, Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 31 (2006) (holding that the mere fact that a product is patented does not support a presumption of market power); *see also Rick-Mik Enters., Inc. v. Equilon Enters., LLC*, 532 F.3d 963, 967 (9th Cir. 2008) ("Because intellectual property rights are no longer presumed to confer market power, [plaintiff's] conclusory allegation that [defendant's] intellectual property rights nonetheless do confer market power, unaccompanied by supporting facts, is insufficient.") (citing *Illinois Tool Works, Inc.*, 547 U.S. at 42-43.).

[24] For example, a single-brand product market may exist for after-market replacement parts required for a single-brand of equipment (e.g. custom parts for a brand-name copy machine). In that situation, it may be impossible for the consumer to substitute for the brand-name component part. *See, e.g., Eastman Kodak Co. v. Image Technical Ins. Servs.*, 504 U.S. 451, 482 (1992) (holding that parts or supplies for a specific product can constitute a relevant product market).

does not need protracted discovery to state with confidence that Rolex watches are reasonably interchangeable with other high quality timepieces."). Thus, courts repeatedly grant motions to dismiss complaints attempting to plead single-product markets, understanding that overly narrow market definitions can be used to hide the inability to plead injury to market-wide competition.[25]

*Third*, Redbox's assertion that each new-release DVD comprises its own market defies common sense and thus fails under *Iqbal*. *Iqbal*, 129 S. Ct. at 1950 (courts must "draw on [their] judicial experience and common sense" to determine whether allegations "plausibly" allege entitlement to relief). Consider an example. According to Redbox's theory, the Fox DVD *Aliens in the Attic*, listed in Exhibit D[26] to the Amended Complaint, does not compete with any other DVD created by Fox or any other studio. If Redbox's theory is true, then Fox and retailers who

---

[25] See *Spahr v. Leegin Creative Leather Prods., Inc.*, No. 2:07-CV-187, 2008 WL 3914461, at *9-10 (E.D. Tenn. Aug. 20, 2008) (dismissing complaint with prejudice on the grounds that there was not a single-brand market despite allegations that demand for the product was "inelastic"); *Hack v. President and Fellows of Yale Coll.*, 237 F.3d 81, 86 (2d Cir. 2000) (allegation that Yale was "without substitute or equal" and so there was a product market consisting of "Yale education" was untenable), *abrogated on other grounds, Swierkeiwicz v. Sorema*, 534 U.S. 506 (2002); *UGG Holdings v. Severn*, No. 04-1137, 2004 WL 5458426, at *4 (C.D. Cal. Oct. 1, 2004) (dismissing complaint that limited relevant market to "sheepskin, fleece-lined boots" where there were no allegations regarding why other types of boots were not acceptable substitutes); *Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.*, 812 F. Supp. 387, 391-92 (S.D.N.Y. 1993) (dismissing complaint and rejecting proposed market consisting of single computer program for elementary school students); *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992) (rejecting proposed market comprised of one television channel).

[26] Redbox attaches to its Amended Complaint a list of Fox DVDs it claims it can no longer purchase for thirty days through "normal wholesale channels." (Am. Compl. ¶ 38; *id.* Ex. D.) So, according to Redbox, each of the DVDs listed on Exhibit D comprises its own separate product market. Redbox, however, does not attempt to allege why any of these particular titles has no reasonable substitute. Instead, Redbox relies only on sweeping assertions about consumer preferences without alleging any supporting facts. These kinds of conclusory allegations are insufficient to survive a motion to dismiss. *See Iqbal*, 129 S. Ct. at 1950 ("conclusions [] are not entitled to the assumption of truth").

rent that DVD have monopoly power and would be able to command any price they want for the DVD upon its release because the DVD would have no competition from other DVDs. *See, e.g., Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 329 (D.N.J. 1999) ("Monopoly or market power has been defined as the power to control prices or exclude competition in the relevant market.") (citations omitted). Yet Redbox does not, and cannot, allege that Fox or retailers of Fox DVDs can demand any price they want for this movie without regard to competition from other DVDs. Indeed, the Amended Complaint itself alleges that there is price competition amongst DVD rental companies. (Am. Compl. ¶ 17.) Although, Redbox's market definition assumes that a patron searching for one movie would never consider renting other movie titles in its place, that is inconsistent with common experience and not supported by factual allegations. Because Redbox fails to allege a plausible product market, its antitrust claims should be dismissed. *See Iqbal*, 129 S. Ct. at 1950; *see also Queen City*, 124 F.3d at 430.

*Fourth*, Redbox's assertion that each new-release DVD comprises its own market because studios are alleged to time their releases to avoid competition (*see* Am. Compl. ¶ 24) collapses under Redbox's own factual allegations. Redbox defines "new release" as DVDs that are within 30 days of their release date. (*Id.* ¶ 21.) To support its market definition, Redbox would need to allege for each DVD that no other DVD to which consumers would substitute exists within that 30-day period.[27]

---

[27]   Significantly, as further evidence that Redbox has attempted to impermissibly gerrymander its proposed product market, Redbox's definition of what constitutes a "new-release" DVD differs across the separate complaints it filed against Fox, Universal and Warner. While Redbox defines "new-release" DVDs here as DVDs within "30 days of their street date" (Am. Compl. ¶ 21), in the Warner complaint, the new-release period is 28 days (Warner Am. Compl. ¶ 20) and in the Universal Complaint, the period is 45 days (Universal Am. Compl. ¶ 31.)

But Redbox's *factual* allegations illustrate just the opposite. For example, referencing box office releases that are allegedly analogous to DVD releases, Redbox states that "Fox avoided head-to-head competition with '*War of the Worlds*' during a coveted Fourth of July weekend by releasing its '*Fantastic Four*' a week later. Similarly, Warner Brothers released '*Batman Begins*' in mid-June, thereby avoiding competition with Fox's '*Fantastic Four*.'" (*Id.* ¶ 24.) Redbox thus *admits* that these three movies *compete with each other* — the only issue is timing. (*See, e.g., id.* ¶ 24 ("Fox avoided *head-to-head competition* . . . "); *id.* (Warner Brothers "avoid[ed] *competition*").) This contradicts the proposition on which Redbox bases its market definition: that DVDs cannot compete because they are each unique, copyrighted works.

These allegations also contradict Redbox's statement that release dates are scheduled so as to completely avoid inter-brand competition. This is because the alleged release periods for each of these movies *overlap*. Specifically, "*Batman Begins*" was allegedly released in "mid-June"; "*War of the Worlds*" was allegedly released on July 4th; and "*Fantastic Four*" was allegedly released "a week later." (*Id.* ¶ 24.) Thus, each movie would be considered a "new-release" (i.e., according to Redbox's definition, a movie that is within 30 days of its release date) simultaneously. In short, the example intended to show that each new-release DVD has *no substitute* during its new-release period proves just the opposite: three competing movies, produced by different studios, have 30 day new-release periods that substantially overlap. Thus, Redbox's single-DVD market definition does not overcome its own factual allegations. Because Redbox has not alleged a plausible antitrust market, its Section 1 claims should be dismissed. *See, e.g., Bldg. Materials Corp. of Am. v. Rotter*, 535 F. Supp. 2d 518, 525 (E.D. Pa. 2008) (dismissing Section 1 claim due to party's failure to properly allege relevant product market); *Brunson Commc'ns, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550, 565 (E.D. Pa. 2002) (dismissing

32

Section 1 claim because "[p]laintiff never alleges how trade has been restrained, or how the market in which [p]laintiff does business has become less competitive due to the actions of Defendant").

Redbox also does not plead a plausible antitrust market by its alternative allegation that the relevant market or submarket consists not of each individual DVD, but the newly-released DVDs in each genre or category. (*See* Am. Compl. ¶ 27.) Apart from failing for vagueness,[28] Redbox does not offer any basis for concluding that DVDs in one genre do not compete with another. So, for example, Redbox alleges no facts supporting its theory that someone interested in renting an "action/adventure" DVD would not also consider renting a "sci-fi" or "suspense" DVD. Experience tells us that many people do not have monolithic tastes in film. Someone can enjoy both "comedy" and "drama," "action/adventure" and "science fiction," etc. Redbox's genre-based approach to market definition, therefore, on its face fails to account for "all interchangeable substitute products" and thus cannot support a Section 1 claim. *See Queen City Pizza, Inc.,* 124 F.3d at 436.

Just as significant, even if Redbox's genre-based market definition were workable (and it is not), a genre-based market would contain *multiple brands* and thus would require Redbox to allege injury to market-wide, *inter-brand* competition. The example discussed above illustrates that three studios released three movies within the same genre within thirty days of each other. If

---

[28] For example, is "*Terminator*" considered "action/adventure," "sci-fi," or "suspense"? (*See id.* ¶ 25.) This is reason enough to reject the alleged market. *See, e.g., Cupp v. Alberto-Culver USA, Inc.,* 310 F. Supp. 2d 963, 970 (W.D. Tenn. 2004) (dismissing complaint where "Plaintiff's attempted definition of the relevant product market [was] insufficient and fatally vague") (citation omitted).

the market is defined as new-release DVDs within a given genre, then these three movies produced by three different studios *compete*. In other words, a genre-based market would not only include Fox DVDs within the genre, but other studios' DVDs as well. To state a Section 1 claim, therefore, Redbox would need to allege that Fox's distribution decisions harm *inter-brand* competition — something that Redbox has not and cannot do.

## II.   Redbox's Copyright Misuse Claim (Count I) Fails Because Copyright Misuse Is an Affirmative Defense, Not a Claim.

In Count I of its Complaint, Redbox seeks a declaration that Fox's actions with respect to VPD and Ingram constitute copyright misuse. (Am. Compl. ¶¶ 41-46.) But copyright misuse is an equitable defense to a copyright infringement claim; not an affirmative cause of action. *See, e.g., Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 203-04 (3d Cir. 2003) (refusing to apply copyright misuse doctrine to licensing agreements).[29]

Redbox's copyright misuse claim against Fox is nearly identical to its copyright misuse claim against Universal. (*Compare* Universal Am. Compl. ¶¶ 57-63 *with* Am. Compl. at ¶¶ 41-46.) This Court dismissed Redbox's copyright misuse claim against Universal, concluding that "[c]opyright misuse is not a claim, but a defense, and Redbox may not create a justiciable claim for copyright misuse in this jurisdiction by labeling Count I as one seeking declaratory relief."

---

[29] *See also Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005) (copyright misuse is not an independent claim where there has been no allegation of copyright infringement); *Ticketmaster, L.L.C. v. RMG Techs., Inc.*, 536 F. Supp. 2d 1191, 1198-99 (C.D. Cal. 2008) (copyright misuse is only an affirmative defense to a claim for copyright infringement and does not support an independent claim for damages); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 269 F. Supp. 2d 1213, 1225-1226 (C.D. Cal. 2003) (dismissing defendant's claim for declaratory relief as to copyright misuse); *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1199 n.4 (N.D. Cal. 2004) ("Plaintiffs cite no legal authority, and the Court is aware of none, that allows an affirmative claim for damages for copyright misuse").

(Universal Op. at 6 (citing *Arista Records v. Flea World, Inc.*, 356 F. Supp. 2d 411, 428 (D.N.J. 2005)).) Nothing in Redbox's Complaint against Fox warrants a different result here. Accordingly, Redbox's copyright misuse claim should be dismissed.

## III. Redbox's Tortious Interference With Contract Claim (Count VI) Fails Because Redbox Cannot Allege That Ingram or VPD Breached Their Contract With Redbox.

To state a claim for tortious interference with contract, Redbox must plead (1) the existence of a valid contract between Redbox and Ingram/VPD; (2) Fox's knowledge of those contracts; (3) Fox's intentional interference with those contracts; (4) a breach of contract by VPD and Ingram; and (5) damages. (Universal Op. at 10 (citation omitted)); *see also In re Frederick's of Hollywood, Inc. Shareholders Litig.*, No. 15944, 1998 WL 398244, at *5 (Del. Ch. July 9, 1998). Here, as with its tortious interference claim against Universal, Redbox's claim fails because Redbox cannot allege that VPD or Ingram breached their alleged agreements with Redbox. Redbox attached its contract with Ingram as Exhibit A to the Amended Complaint. Redbox alleges that this contract is "similar" to its contract with VPD. (Am. Compl. ¶ 32.) Because the contract is attached to Redbox's Amended Complaint, the Court may consider Redbox's claims in light of the Ingram contract. *See, e.g., Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) ("Generally, in ruling on a motion to dismiss, a district court relies on the complaint [and] attached exhibits . . .") (citation omitted).

Redbox's contract with Ingram does not guarantee that Ingram will provide Fox DVDs to Redbox. The operative terms of the Redbox-Ingram contract appear to be the same as those in the Redbox-Ingram contract attached to Redbox's Complaint against Universal. (*See* Universal Op. at 11-12.) Upon reviewing that contract, this Court stated that "Ingram's contractual obligations to Redbox do not include the guaranteed provision of Universal DVDs upon Redbox's demand." (*Id.* at 10.) The Court concluded that "[b]ecause the contract does not

35

obligate Ingram unconditionally to deliver Universal, or any, DVDs to Redbox, Ingram's

decision not to supply Redbox with Universal DVDs technically is not a breach of the

agreement between Redbox and Ingram." (*Id.* at 11-12.)

Here, the Redbox-Ingram contract also does not unconditionally require Ingram to

provide Fox DVDs to Redbox and "cautions that Ingram's timely delivery to Redbox is

conditioned on 'Ingram Entertainment's suppliers mak[ing] timely delivery to Ingram." (*Id.* at

11.) Because Redbox states that its VPD agreement is similar to its agreement with Ingram, the

Court may conclude that the Redbox-VPD agreement is also conditioned on Fox's delivery of

DVDs to VPD. Accordingly, Redbox's tortious interference with contract claim fails because

Redbox cannot allege that Fox caused VPD or Ingram to breach their alleged agreements with

Redbox. (Universal Op. at 11); *Luscavage v. Dominion Dental USA, Inc.*, No. 06C-07-219, 2007

WL 901641, at *2 (Del. Super. Ct. Mar. 20, 2007) (dismissing tortious interference claim

because plaintiff failed to adequately plead a breach of contract).

## IV.    Redbox's Tortious Interference With Prospective Business Opportunity (Count VII) And Unfair Competition (Count VIII) Claims Fail As A Matter Of Law.

Redbox's Amended Complaint asserts additional causes of action for tortious interference

with prospective business opportunity and unfair competition. Both counts rely on allegations

that Fox interfered with Redbox's prospective relationships with Wal-Mart, Best Buy and Target.

Neither count is plead adequately to state a claim.

To state a claim for tortious interference with prospective business relationships, Redbox

must plead: (1) the existence of a valid business relation or expectancy, (2) the interferer's

knowledge of the relationship or expectancy, (3) intentional interference that (4) induces or

causes a breach or termination of the relationship or expectancy and that (5) causes resulting

damages to the party whose relationship or expectancy is disrupted. *See In re Frederick's of*

36

*Hollywood, Inc.*, No. 15944, 1998 WL 398244, at \*5 (Del. Ch. 1998) (footnote reference omitted). Similarly, to plead common law unfair competition, Redbox must "allege that it has a reasonable expectancy of entering a valid business relationship with which the defendant wrongfully interferes, thereby defeating the plaintiff's legitimate expectancy and causing the plaintiff harm." *Delaware Solid Waste Auth. v. E. Shore Envtl., Inc.*, No. 1472-K, 2002 WL 537691, at \*6 (Del. Ch. Mar. 28, 2002).[30] Redbox cannot satisfy these requirements.

   *First*, Redbox does not plead any facts demonstrating that it has a reasonable expectancy of a business relationship with Wal-Mart, Best Buy or Target. Indeed, Redbox would need to allege that these three national retailers now suddenly wish to transform themselves into DVD distributors for Redbox's 20,000 kiosks. Redbox states the conclusion that it has such an expectation, but merely reciting the elements of a claim without pleading facts that would make the claim plausible warrants dismissal. *See, e.g., Fowler*, 578 F.3d at 210 ("[A] pleading offering only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." (citing *Twombly*, 550 U.S. at 555)). Indeed, as explained above, retailers have very good reasons to limit quantities of products purchased (as they often do) and to maintain their roles as traditional retailers, rather than become Redbox's DVD distributor. Absent factual allegations demonstrating a reasonable expectation of business relationships with Wal-Mart, Best Buy and Target, Redbox's tortious interference and unfair competition claims should be dismissed. *See, e.g., In re Frederick's of Hollywood, Inc.*, 1998 WL 398244, at \*5

---

[30] Because the claims are similar, Fox addresses the unfair competition claim and the tortious interference with prospective business relationships claims together.

(dismissing complaint where plaintiffs did not adequately plead a valid business expectancy that they would be able to receive a higher price for their stock).[31]

*Second*, Redbox offers no factual allegations that Fox "intentionally interfered" with any business expectation as between Redbox and either Wal-Mart, Best Buy or Target. *See, e.g., In re Fedders N.A., Inc.*, 405 B.R. 527, 550 (Bankr. D. Del. 2009) (granting motion to dismiss tortious interference with prospective business opportunities claim where plaintiff did not plead "facts showing that there was any intentional interference with [an] opportunity"). As explained at Part I.A.2 above, Redbox does not allege any agreement between Fox and Wal-Mart, Best Buy or Target to restrict sales to Redbox. Redbox only alleges that Fox "seeks" agreement with these retailers. (Am. Compl. ¶ 36.) Absent any agreement interfering with Redbox's relationships, Redbox offers no allegations as to how or why "seeking" an alleged agreement has interfered with Redbox's prospective business relationships. Indeed, Redbox's own SEC statement filed just 18 days ago indicates that Redbox continues to procure DVDs from Wal-Mart, Best Buy and Target. (*See* Part II.B, n.20 *supra*.)

*Third*, Redbox has not alleged that Fox engaged in *wrongful* conduct. *See Delaware Solid Waste Auth.*, 2002 WL 537691, at *6 ("Only wrongful interferences will satisfy the tort, as some interferences are seen as justified or privileged under the aegis of competition. Unfair competition, which is not privileged, includes fraud, intimidation or disparagement.") (footnote reference omitted). There is nothing wrongful, malicious or tortious about Fox announcing a

---

[31] *See also Premium Mortgage Corp. v. Equifax, Inc.*, 583 F.3d 103, 107-108 (2d Cir. 2009) (affirming dismissal of tortious interference with prospective business opportunities where plaintiff did not sufficiently plead elements) (applying New York law). *See also Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (affirming dismissal of tortious interference with prospective business opportunities claim where plaintiff failed adequately to plead harm) (applying California law).

38

unilateral wholesale distribution policy. Indeed, the U.S. Supreme Court repeatedly has recognized the rights of sellers to refuse to deal with buyers and to exercise discretion in structuring their distribution. *See, e.g., Colgate*, 250 U.S. at 307 (noting that seller may "freely . . . exercise his own independent discretion as to parties with whom he will deal"); *Pac. Bell Tel. Co.*, 129 S. Ct. at 1123 (2009) (noting that sellers have freedom to price their own products and to refuse to deal with buyers). Thus, for the same reasons that Fox's distribution policy is not a federal antitrust violation, Fox's policy also does not comprise "wrongful" conduct under tort and unfair competition law.

## CONCLUSION

For the foregoing reasons, Fox respectfully requests that the Court grant this motion and dismiss Redbox's Amended Complaint with prejudice.

Dated:  December 21, 2009

Respectfully submitted,

/s/  Beth Moskow-Schnoll
Beth Moskow-Schnoll (No. 2900)
BALLARD SPAHR LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
Tel:    (302) 252-4447
Fax:    (302) 355-0221
Email: moskowb@ballardspahr.com

39

Neal Walters
BALLARD SPAHR LLP
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ 08043
Tel: (856) 761-3438
Email: waltersn@ballardspahr.com

*Attorneys for Twentieth Century Fox Home
Entertainment, LLC*

OF COUNSEL

Yosef J. Riemer (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York City, NY 10022
Tel: (212) 446-4802
Email: yosef.riemer@kirkland.com

Corey C. Watson (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Tel: (213) 680-8482
Email: corey.watson@kirkland.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REDBOX AUTOMATED RETAIL, LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 09-592-RBK |
| vs. | ) |
| | ) |
| TWENTIETH CENTURY FOX HOME | ) |
| ENTERTAINMENT, LLC | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## DECLARATION OF DAVID HOROWITZ IN SUPPORT OF TWENTIETH CENTURY FOX HOME ENTERTAINMENT LLC'S MOTION TO DISMISS REDBOX'S AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

I, David Horowitz, declare as follows:

1. I am an attorney at the law firm of Kirkland & Ellis LLP, counsel for Twentieth Century Fox Home Entertainment LLC ("Fox") in this matter. I submit this declaration in support of Fox's Motion to Dismiss Redbox's Amended Complaint. I have personal knowledge of the facts set forth herein and if called to testify, could testify competently thereto.

2. Attached hereto as **Exhibit A** is a true and correct copy of Coinstar Inc.'s 10-Q dated November 6, 2009.

3. Attached hereto as **Exhibit B** is a true and correct copy of Coinstar Inc.'s 8-K dated July 21, 2009.

4. Attached hereto as **Exhibit C** is a true and correct copy of Coinstar Inc.'s 8-K dated August 11, 2009.

5. Attached hereto as **Exhibit D** is a true and correct copy of Coinstar Inc.'s 8-K dated August 25, 2009.

6.   Attached hereto as **Exhibit E** is a true and correct copy of Coinstar Inc.'s 8-K dated December 3, 2009.

7.   Attached hereto as **Exhibit F** is a true and correct copy of Coinstar Inc.'s 10-K dated February 26, 2009.


I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this _21st_ day of December, 2009 in Los Angeles, California.

David Horowitz